Commonwealth *v.* Burton et al., Appellants.

Argued November 15, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John J. Speese*, with him *John B. Burns*, for appellants.

*James W. Tracey, Jr.*, Assistant District Attorney, with him *John H. Maurer*, District Attorney, for appellee.

OPINION BY DITHRICH, J., January 14, 1949:

All six defendants, who were the election officers in the 16th division of the 47th ward of Philadelphia at the general election held November 4, 1947, were found guilty on each of five indictments charging violation of the Pennsylvania Election Code, June 3, 1937, P. L. 1333, 25 PS §2601. They were convicted of unlawfully inserting names in voters' certificates and of willful fraud by election officers; making a false return on votes at a general election; fraudulently registering voters on a voting machine; conspiracy to violate the election laws; and unlawfully certifying a return of votes at a general election.

The evidence of a flagrant perpetration of election fraud was overwhelming. Of the 956 votes certified as having been cast, at least 100 were fraudulent. Approximately that number of witnesses testified that they had not signed the voters' certificates purporting to bear their signatures, had not voted, and had not even

been present in the polling place on the day the election was held. The defendants went so far as to cast votes fraudulently for three persons who were serving jail or penitentiary sentences on the day of the election and were still confined eight months later when the case came on for trial.

Defendants offered no evidence and as stated in their brief of argument "relied solely upon their contention that the Commonwealth had not established that the defendants were the men who comprised the Election Board in the 16th Division of the 47th Ward at the General Election held . . . on November 4, 1947." The evidence as to the identity of the defendants was almost as overwhelming as the evidence that the Election Code had been violated. To begin with, as stated in the opinion of the learned president judge of the court below: ". . . the Commonwealth offered the election returns and the payroll vouchers, bearing the names of the defendants; also, their registration affidavits; their voters' certificates which established that persons bearing defendants' names had been present in person in the polling place on the day of the election. Each of these registration affidavits bore a description which fitted the defendant whose name appeared thereon. It is obvious that each of the defendants has a distinctive and unusual name. The registration binder, offered in evidence, contained only one registration affidavit for each of those unusual names, showing that there was only one person among all the registered voters in the division in question bearing each of those names. When the defendants were produced by the bondsman, each of them had acknowledged his name. That was sufficient to have sent the case to the jury."

As stated by this Court in *Commonwealth v. Kazman*, 92 Pa. Superior Ct. 175, 178, in an opinion by HENDERSON, J., "identity of name is prima facie evidence of identity of person, and in the absence of any

denial, the presumption of identity is sufficient to send the case to the jury."

The Commonwealth also proved, by testimony given by the Chief Inspector for the Registration Commission of the County of Philadelphia, that, in the course of an investigation conducted by the Commission as to alleged fraud in the conduct of the general election in the 16th division of the 47th ward, the election board was subpœnaed to appear before the Commission. Five of the six members appeared, and, in response to questions, gave their names, their addresses, and stated that they had served as members of the board on the election day in question.

It is contended by defendants that the admission of this testimony violated Article VIII, §10, of the Constitution of Pennsylvania, which reads as follows: "In trials of contested elections and in proceedings for the investigation of elections, no person shall be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding except for perjury in giving such testimony."

The testimony by the inspector for the Registration Commission was merely cumulative and in no sense incriminating; and, as stated by the learned trial judge, "Although the defendants appeared before the Registration Commission in response to subpœna, they were not thereby compelled to testify. They did not object to the questions or to answering them, but gave their answers readily and voluntarily."

In the leading case on the subject, *Commonwealth v. Richardson*, 229 Pa. 609, 79 A. 222, the judgment of this Court was affirmed on the opinion of President Judge Rice. He said, pages 616-617: ". . . the transcript of the evidence he gave fails to show that he demurred to answering any question that was put to

him upon the ground that the answer might criminate him or upon any ground whatever. It gives no indication, and there is no extraneous evidence tending to show, that he did not testify freely and voluntarily, or that he became a witness under compulsion of law or of legal process."

In that case the witness, as here, had appeared in response to a subpœna. While from the opinion of Judge RICE there would appear to be some doubt as to whether the witness had appeared in obedience to a subpœna, an examination of the record discloses in the supplementary addition to appellant's paper book, page 24, that the trial court found that defendant (Richardson) "responded to a subpœna on the part of the Commonwealth." In order to remove any doubt that the appearance of a witness in answer to a subpœna does not amount to "compulsion of law or of legal process," we now so rule.

Defendants further object to the admission into evidence of the exhibits purporting to bear their signatures, in the absence of proof as to the genuineness of said signatures. It was not error to admit such evidence. Cf. *Commonwealth v. Kazman,* supra; *Commonwealth v. Middleton,* 134 Pa. Superior Ct. 573, 4 A. 2d 533. While there was some doubt expressed by the trial judge as to three of the signatures, it was for the jury to say whether or not the signatures found upon the documentary proof were the same as the admitted signatures of the defendants on the voters' certificates.

Further complaint is made that the trial judge erred in permitting the Commonwealth to reopen its case after the defense had interposed a demurrer. The Commonwealth's motion was granted before the trial judge had ruled on the demurrer and not after the court had overruled the demurrer, as contended by defendants. It appears from the record that, after hearing the additional testimony, the trial judge stated to counsel:

" ' . . . to keep the record straight, do you wish to renew your demurrer at this time?' Counsel for defendants then asked if their demurrer had been overruled and the trial judge said, 'No. You renew it now, after this, and I will overrule your demurrer and grant you an exception.' " That was done without objection by defendants. As stated by this Court in *Commonwealth v. Derembeis,* 120 Pa. Superior Ct. 158, 171, 182 A. 85: "Rules of procedure are intended to aid, not hamper, the ascertainment of the truth. Every court has power to open a case prior to its final submission to the jury in order to prevent either a failure or a miscarriage of justice." It was a matter entirely within the discretion of the trial judge.

When the jury was asked "Have you agreed upon a verdict?" the foreman answered "Yes." The crier asked "All twelve have agreed?" The foreman again answered in the affirmative. The same questions were asked and the same answers were made as to each of the five indictments. Counsel for defendants then asked that the jury be polled, and in the poll one of the jurors, in answer to the crier's question, ". . . do you find all the defendants guilty on all bills?" said "No, I don't." The court then asked the juror if she did not understand from his charge that the verdict must be unanimous. The juror answered "Well, not exactly, . . ." The jury was then instructed to renew its deliberations and to see if it could not "reach a unanimous verdict." Inside of fifteen minutes the jury returned with the unanimous verdict of guilty as indicted, as to all defendants on all bills, and that is the verdict that was recorded. No objection was made when the jury was instructed to resume its deliberations and it was not until the jury was ready to report a second time that counsel moved for the withdrawal of a juror. They stated at the time that they had no authority to offer in support of their motion, nor have they submitted any

on appeal. This likewise was entirely within the discretion of the trial judge, and we find no abuse of discretion.

Although no request was made for a court en banc to pass on defendants' motion for a new trial and no objection made to the trial judge's sitting alone, defendants now contend that such action was a denial of constitutional due process of law. In the latest pronouncement on that question we said, in an opinion by HIRT, J., in *Commonwealth v. Nolf*, 162 Pa. Superior Ct. 552, 555-556, 58 A. 2d 839: ". . . it was proper for the trial judge alone to hear and dispose of the motions in arrest of judgment and for a new trial. There is no statutory requirement nor decision in Pennsylvania that such motions must be heard by a court in banc. Commonwealth v. Parker et al., 294 Pa. 144, 143 A. 904. In that case four defendants were convicted of first degree murder, three of them with the penalty of death. The trial judge alone, without calling in his colleague to sit with him as a court in banc, disposed of the motions for new trials, and imposed sentence on the defendants. The criticism of the practice by the Supreme Court in the Parker case has no validity where the conviction is of a misdemeanor such as here involved."

Finally, it is contended by defendants that the learned court below erred in calling on the Committee of Seventy, a civic organization in the City of Philadelphia, to make an investigation to assist the court in determining whether the defendants had been the active perpetrators of the fraud or whether they had been mere "cat's-paws" for other more interested persons. It is true the investigation was made while the motion for a new trial was pending, but there is nothing in the record to indicate that President Judge OLIVER asked for the investigation for any other reason than to "help me in determining what sentence should be imposed." There was some doubt in his mind, and in the

mind of the assistant district attorney, as to whether all of the parties who participated in the election fraud had been apprehended and brought to trial; but that is no reason why the members of the election board, who were charged with a high duty, should be permitted to go scot free. Notwithstanding the investigation was made before the new trial motion had been overruled, we are clearly of the opinion that it was, as stated by the sentencing judge, a pre-sentence investigation and that the defendants far from having been harmed thereby may have benefited from it.

All of the assignments of error are overruled, the judgment is affirmed, and it is ordered that the defendants appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with the sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.