Commonwealth *v.* Wilmer, Appellant.

Argued May 1, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Charles Robert Bernsee,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Harold K. Don, Jr.,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 28, 1969:

Appellant was tried before a judge and jury and was convicted of aggravated assault and battery, rape, and several lesser included charges. The Superior Court affirmed in an opinion by Judge ERVIN, Judge HOFFMAN dissenting in an opinion in which Judge SPAULDING joined. *Commonwealth v. Wilmer,* 208 Pa. Superior Ct. 102, 220 A. 2d 360 (1966). We granted allocatur.

Appellant maintains that the initial and supplemental charges of the court below were error. In the initial charge, the trial judge told the jury: "You are American citizens, and we all live under the same flag. And you do what is right and proper in the sight of Almighty God, because you are chargeable as jurors be-

fore the Great Maker of the Universe to do what is right in this case. You are not responsible to me; you are responsible to everybody in the Commonwealth, and you are responsible to God how you act here. You bring in a proper verdict."

In *Commonwealth v. Holton*, 432 Pa. 11, 18-19, 247 A. 2d 228, 232 (1968), this Court, per Mr. Justice EAGEN, characterized a similar charge* as improper, quoting from Judge HOFFMAN'S dissenting opinion in the Superior Court: " 'It is not for us to determine the court's intent in making this statement or the jury's inference from it. . . . More importantly, individual jurors *might* have concluded, as appellant suggests, that the court was threatening them with the wrath of God should they bring in a verdict of not guilty.' " (Emphasis added.) That statement is equally applicable to the case before us.

The Commonwealth attempts to distinguish *Holton* by arguing that there, the erroneous charge was made after the jury had been deliberating for twenty-two hours, while here, the comment was made before the jury retired. In effect the Commonwealth is asking us to do what we refused to do in *Holton*—attempt to inquire into the psychological motivations of the jury to determine whether and in which way they were affected by the erroneous charge. This we once again refuse to do. It is clear that our decision in *Holton* was based on what the jury might have thought, and in our opinion that is the only workable test. Here at least one of the jurors certainly could have believed that an acquittal would bring the wrath of God down upon his head, and this well might have affected the

---

* We do not believe that the differences between the charge here and the one in *Holton* are significant. Although the charge in the case before us was not as pointed in its references to the Judgment Day, its general subject matter, tone, and import was precisely the same as the charge in *Holton*.

jury's deliberations and ultimate verdict. Viewed in this light, it is irrelevant when the erroneous charge was made.

We also agree with appellant's contention that the court below committed error in its supplemental charge. To properly evaluate this issue, some background discussion is necessary.

The jury verdict turned on a determination of credibility. The victim was unable to identify appellant or even to testify as to whether she had been raped. The police officers who apprehended appellant testified that they discovered in a dark, vacant lot "a white female, lying on her back, completely nude, her legs spread apart, with a colored man on top of her with his pants down, in between her legs, in a motion up and down as though he was having sexual intercourse. . . ." The officers further testified that upon their arrival, appellant jumped up, pulled on his pants, and attempted to escape, but was trapped in the lot and arrested.

Appellant on the other hand maintained that when the police arrived, he was kneeling beside the victim, whom he had discovered in the lot beaten, bleeding profusely, and semi-conscious. Appellant denied that he tried to escape, claiming instead that the officers approached him, shouted racial epithets, and beat him to the ground.

The jury deliberated for an hour and thirteen minutes, then returned and requested evidence concerning appellant's trousers, which had not been introduced into evidence by either side. The trial judge explained that the case was now closed, no further evidence could be heard, and opined that there was sufficient evidence to convict without the trousers. Undaunted, several jurors continued to request further evidence concerning the trousers. The jurors' concern over the importance of the trousers to their decision was expressed most clearly by Juror No. 6: "The *only way* that we could

come up with whether he is the guilty person or not, if he pulled his pants up as the officer stated he did, and he was in the midst of having intercourse with this woman, there should be some form of a discharge or something on some part of his clothing. . . . *Then* we would know he was the guilty one. . . . *That's* the part, the *question* is with us, really." (Emphasis added.)

In responding to these requests, the trial judge instructed the jury that even had appellant committed the act as the officers testified, there would not *necessarily* have been a discharge on appellant's clothing, and reiterated that there was legally sufficient evidence to convict without further evidence concerning the trousers. But while these statements were permissible, the court below also made statements to the effect that the trousers, which apparently were the jurors' main concern, were not even relevant, e.g.: "They [the trousers] wouldn't have shown anything."

We agree with appellant and with Judge HOFFMAN'S dissent in the Superior Court that the comments of the trial judge that the trousers were of *no evidentiary value* and were thus of no aid in determining guilt or innocence improperly removed from the jury's consideration the issue with which it was most concerned. Clearly the condition of the trousers was *relevant,* and the jurors' statements indicated that the absence of evidence as to discharge or other stains on the trousers might well have created the requisite "reasonable doubt" that would have necessitated an acquittal. The Commonwealth, of course, had the burden of proof, and if the jury believed that under the circumstances of this case, the Commonwealth had failed to introduce evidence on a crucial issue, the jury would properly have found a verdict of acquittal.

Although trial judges in Pennsylvania in general have discretion to comment on the evidence, see, e.g.,

*Commonwealth v. Ott,* 417 Pa. 269, 207 A. 2d 874 (1965), here a different problem is presented, since the judge commented on evidence that was *not* introduced, and instructed the jury to all but disregard its obviously serious doubts created by the absence of such evidence. Even under the test reaffirmed in *Ott,* there must be a "reasonable ground for any statement the judge may make." We do not believe that we can consider reasonable a comment that states that relevant evidence (or more accurately, non-evidence) upon which the jury may found a reasonable doubt and upon which its verdict apparently would turn is *meaningless.*

The order of the Superior Court affirming the judgment of the Court of Oyer and Terminer of Philadelphia County is reversed, and a new trial is granted.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.