393 A.2d 844

**COMMONWEALTH of Pennsylvania**

v.

**Gregory FOWLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided Oct. 20, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided, the judgment of sentence is affirmed.

VAN der VOORT, J., files an opinion in support of affirmance in which JACOBS, President Judge and PRICE, J., join.

CERCONE, J., files an opinion in support of reversal.

HOFFMAN, J., files an opinion in support of reversal in which SPAETH, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

The above case was decided prior to the retirement of HOFFMAN, J.

VAN der VOORT, Judge, in support of affirmance:

The appellant files the instant direct appeal following his conviction at jury trial, denial of post-trial motions, and sentencing on charges of simple assault, aggravated assault and criminal conspiracy. He raises several claims of error.

Initially, we review the assertion that the lower court erred in instructing the jurors to re-enter deliberations and " . . . make sure that you have done this right." The record shows that the jurors retired to begin deliberations shortly after 11:00 A.M. on December 12, 1976. At almost 10:00 P.M., on the same date, the jurors returned to the courtroom. The jury foreman announced a verdict of guilty on all charges. The defense thereupon requested that the jurors be polled. The first seven jurors proclaimed a guilty verdict on all charges. The difficulties began when juror number eight, in response to the court crier's question as to his finding on a simple assault charge, stated: "Not guilty. Not guilty." The following colloquy ensued:

THE COURT: Wait, do you understand the question?

JUROR NO. 8: Yes, I do.

THE COURT: Oh, then you have not reached a unanimous verdict?

JUROR NO. 4: (To Juror No. 8) You did, did you?

JUROR NO. 8: (To Juror No. 4) I found him on one count.

THE COURT: Well, I think you have to go back out again and start deliberating again. Make sure that you have this done right. Okay, take them back to the room.

After the jurors left the courtroom, defense counsel entered a motion for mistrial, arguing that the last comment of the trial judge, as related above, might have had the effect of coercing juror number eight in his voting. The lower court refused the motion, and we affirm that decision.

Pennsylvania Rule of Criminal Procedure 1120, dealing with jury verdicts, provides in Section (f): "Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. If upon such poll there is no

concurrence, except for a sealed verdict, the jury shall be directed to retire for further deliberations." Thus, the trial court followed a correct procedure in sending the jurors back to their deliberations. We cannot agree that the court's comment to the jurors in doing so had any possible coercive impact of the sort suggested by appellant.

The appellant cites *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971) in support of his argument. In that case, our Supreme Court held improper the so-called *"Allen"* charge,[1] which, *inter alia*, cautioned the jurors, in strong terms, not to reach unalterable conclusions with a "blind determination", but rather to consider the opinions of other jurors having a different opinion or disposition to suggest. The *Spencer* holding was applicable to situations in which a jury announces that it is hopelessly deadlocked in deliberations, and is totally inapplicable in the circumstances of the instant case, where there was apparently no deadlock, but merely some confusion as to the vote. Moreover, the statement of the trial judge cannot be said to have had the coercive impact on jurors in this case similar to the *"Allen"* type of charge.

Our brethren on this Court suggesting reversal rely upon the holdings in such cases as *Commonwealth v. Wilmer*, 434 Pa. 397, 254 A.2d 24 (1969) and *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968) for support. Such reliance is clearly misplaced as the factual circumstances in such cases make them completely inapposite for application to the instant case. In both *Wilmer* and *Holton*, the jury charges deemed improper strongly suggested to the Supreme Court that jurors may have concluded that they were threatened with the "wrath of God" if they brought in a not guilty verdict. The trial judges, in their charges in both cases, made pointed references to the jurors' duty to answer to the Deity for their verdict, and also appealed to the patriotic instincts of the jurors. The mandate to "make sure that you have done this right", while not the most artful instruction

---

1. See *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

for the jurors, neither carried the coercive impact evidenced in charges in such cases as *Wilmer* and *Holton*, nor created any demonstrable prejudice to appellant. Thus, we must reject appellant's first claim of error.

Next, the appellant contends that the Commonwealth systematically excluded, by peremptory challenge, all members of the Black race who were on the jury panel from sitting on his jury, thereby denying him due process rights, equal protection of law, and trial before a jury of his peers. It is well established that a defendant, in raising such claims, has the burden of establishing a prima facie case of the *systematic* exclusion of Blacks by the Commonwealth. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975). Suffice it to note that appellant in essence admits, in his brief to our Court, that he has not met that burden. He argues however that the *Swain* holding should not be followed by this Court. We simply are not free to ignore the dictates of the United States Supreme Court and the Pennsylvania Supreme Court, in this instance or in any other case. We reject appellant's second contention of error.

Last, appellant claims that reversible error occurred when the court allowed the Commonwealth to amend the conspiracy indictment by adding the criminal objective of aggravated assault after the Commonwealth had rested and the defense had demurred to that indictment. Pennsylvania Rule of Criminal Procedure 220 allows an indictment to be amended if the amendment is one of form and does not charge an additional or different offense.[2] *Commonwealth v. Hudson*, 455 Pa. 117, 314 A.2d 231 (1974); *Commonwealth v. Brown*, 229 Pa.Super. 67, 323 A.2d 845 (1974). The

**2.** Rule 220 provides:

The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense. Upon amendment the court may grant such a postponement of trial or other relief as is necessary in the interests of justice. (Adopted June 30, 1964. Eff. Jan. 1, 1965.)

principal consideration with regard to an indictment is whether the defendant has had notice of the charge he must defend. *Commonwealth v. Brown, supra.*

■ In the instant case, the charges arose out of a vicious attack by three individuals upon two elderly shopkeepers. The appellant had clear notice that he would be required to defend against a charge of aggravated assault, as he was charged with both simple and aggravated assault on two other indictments tried in the same trial. Moreover, the original conspiracy indictment provided that appellant and another individual conspired with the criminal objective of committing robbery and theft and committed the overt acts of robbery and aggravated assault in furtherance of the conspiracy. The amendment permitted by the trial court resulted in adding aggravated assault to the criminal objective section of the indictment, along with robbery and theft.

The amendment permitted by the court caused no prejudice to appellant as he was clearly aware that he would be defending aggravated assault allegations. No specific prejudice is alleged by appellant. While he notes that he had already concluded cross-examination of prosecution witnesses prior to the amendment, he did not request permission to recall such witnesses for further cross-examination, nor did he seek a postponement or other relief as is authorized by Rule 220. The defense proceeded throughout on the theory that appellant was not present or involved in the assault on the victims, and that he was not a conspirator in any of the criminal acts. The amendment permitted could not be seen as having any effect on the theory advanced by the defense. In light of all of these factors, we find no basis for reversal in the lower court's granting of the motion to amend indictment.

Affirmed.

JACOBS, President Judge, and PRICE, J., join in this Opinion.

HOFFMAN, Judge, in support of reversal:

Appellant raises three contentions: (1) the lower court erred in allowing the Commonwealth to amend the criminal objective section of a conspiracy indictment, (2) the trial court coercively instructed the jury to redeliberate and to "make sure that you have this done right" after one juror announced a verdict of not guilty during a poll of the jury, and (3) the Commonwealth deliberately and unconstitutionally excluded all members of appellant's race from the jury. I would grant appellant a new trial because the trial court's instructions may very well have coerced the dissenting juror to alter his vote.

In July 1975, a Philadelphia grand jury returned five separate bills of indictment charging appellant with various crimes stemming from a violent attack with crowbars by three men upon two elderly shopkeepers. Indictment number 799 charged appellant with possession of an instrument of crime; [1] indictment numbers 800 and 801 charged appellant with simple [2] and aggravated assault [3] against two shopkeepers; indictment number 802 charged appellant with criminal conspiracy; [4] and indictment number 803 charged appellant with robbery.[5] Before appellant's first trial, the Commonwealth decided not to proceed on indictment number 799. On November 14, 1975, trial commenced before a jury on the remaining charges. At the close of the Commonwealth's case-in-chief, the trial court sustained a demurrer to indictment number 803 charging robbery. On November 21, 1975, the trial court declared a mistrial because the jury could not reach a verdict on the remaining bills of indictment.

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 907.

2. The Crimes Code, supra; 18 Pa.C.S. § 2701.

3. The Crimes Code, supra; 18 Pa.C.S. § 2702.

4. The Crimes Code, supra; 18 Pa.C.S. § 903.

5. The Crimes Code, supra; 18 Pa.C.S. § 3701.

On December 8, 1975, a second trial on indictment numbers 800, 801, and 802 commenced before a jury. The jury found appellant guilty of all crimes charged in these indictments. After denying appellant's post-verdict motions, the lower court sentenced appellant to concurrent one-to-ten year terms of imprisonment on the three indictments. This appeal followed.

Appellant first contends that the lower court improperly allowed the Commonwealth to amend the criminal objective section of indictment number 802 charging conspiracy. The original indictment specified that appellant and one Tyrone Davis conspired with the criminal objective of committing robbery and theft and committed the overt acts of robbery and aggravated assault in furtherance of this conspiracy. After the Commonwealth presented its case-in-chief, appellant's counsel demurred to the conspiracy indictment because no evidence of robbery had been introduced. At this point, the Assistant District Attorney asked the trial court to amend the criminal objective set forth in indictment number 802 to read robbery, theft, and aggravated assault. The trial court granted the amendment and then refused defense counsel's request for a mistrial.

Rule 220 Pa.R.Crim.P.; 19 P.S. Appendix, provides: "The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense. Upon amendment the court may grant such a postponement of trial or other relief as is necessary in the interests of justice." [6] In *Commonwealth v. Swint*, 465 Pa. 450, 350 A.2d 851 (1976), our Supreme Court held that the lower court improperly allowed the Common-

---

**6.** See also Act of March 31, 1860, P.L. 427, § 13; 19 P.S. § 433 which provides, in pertinent part: "[I]t shall and may be lawful for the court  .    .    .    .   if it shall consider[-]variance [between the proof at trial and the allegations in the indictment] not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense upon such merits, to order such indictment to be amended, according to the proof,  .   .   . "

wealth, during the presentation of its case-in-chief, to amend an indictment charging defendant with illegal possession of a weapon on August 13, 1972, the date defendant allegedly shot two people, to September 11, 1972, the date of defendant's arrest. The Court stated that this amendment in effect constituted a different offense and prejudiced the defense at trial. "The indictment, as amended, charged an offense of the same genus but arising out of different facts and was not part of the chain of events which culminated in the murder and assault. . . . The amendment caused not just a shift in defense strategy but a change in the basic nature of the proofs required at trial. Since the defense to one charge was not a defense to the other, we find that the amendment charged a 'different offense' within the meaning of Rule 220." supra, 465 Pa. at 455, 350 A.2d at 854.

In *Commonwealth v. Bruce*, 230 Pa.Super. 507, 326 A.2d 628 (1974), an indictment charged the defendant with burglary and specified that the defendant entered the premises with the intent to commit larceny therein. After a guilty verdict had been returned, the lower court permitted the Commonwealth to amend the indictment to allege burglary with the intent to commit murder. Our Court reversed the lower court and held that the amendment constituted a substantive and prejudicial change in the indictment. In particular, we noted that the crimes of murder and larceny each have different elements, require proof of different facts, and are subject to different defenses.

I believe that the trial court in the instant case did not violate Rule 220 by permitting an amendment to the criminal objective section of the conspiracy indictment. By allowing the Commonwealth to list aggravated assault as well as robbery and theft as a criminal objective, the lower court did not amend the indictment so as to charge "an additional or different offense." The original indictment alleged that appellant and Tyrone Davis conspired to commit robbery or theft and in furtherance of this conspiracy committed the overt act of aggravated assault upon the two shopkeepers. 18 Pa.C.S. § 3701 defines robbery, in pertinent part, as

follows: " . . . A person is guilty of robbery if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or (iii) commits or threatens immediately to commit any felony of the first or second degree." 18 Pa.C.S. § 2702, defines aggravated assault, in pertinent part, as follows: "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; . . . or (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." Implicit in the indictment's designation of robbery as a criminal objective of the co-conspirators and aggravated assault as an overt act in furtherance of the goals of the conspiracy is the grand jury's belief that the co-conspirators intended and conspired to inflict serious bodily injury upon the shopkeepers in the course of robbing the store.[7] In short, the criminal objective and overt act sections of the original indictment, read together adequately informed appellant that the Commonwealth accused him of conspiring to commit aggravated assault, in essence if not in name, by inflicting serious bodily injury upon the victims. See *Commonwealth v. Boone,* 450 Pa. 357, 301 A.2d 699 (1973); *Commonwealth v. Brown,* 229 Pa.Super. 67, 323 A.2d 845 (1974); *Commonwealth v. Coles,* 226 Pa.Super. 488, 313 A.2d 329 (1974). In contrast to *Commonwealth v. Swint,* supra, and *Commonwealth v. Bruce,* supra, the addition of aggravated assault to robbery and theft as a criminal objective did not substantially change the basic nature of proofs required at trial or the nature of defenses available to appellant. The amendment technically changed the description of the crime charged, but did not charge an "additional or different offense" within the meaning of Rule 220.

7. In order to secure a conviction for aggravated assault, the Commonwealth must prove that a defendant specifically intended to cause or attempt to cause serious bodily injury or to cause or attempt to cause bodily injury with a deadly weapon. See 18 Pa.C.S. § 2702(a)(1) and (a)(4).

Even if an amendment to an indictment did not violate Rule 220, it would still be improper if the permitted variance "could mislead the defendant at trial, [involve] an element of surprise prejudicial to the defendant's efforts to prepare his defense, [preclude] the defendant from anticipating the prosecution's proof, or [impair] a substantial right." *Commonwealth v. Pope,* 455 Pa. 384, 391, 317 A.2d 887, 890 (1974). (footnotes omitted). See also *Commonwealth v. Watkins,* 239 Pa.Super. 144, 361 A.2d 656 (1976). I have already noted that the amendment did not surprise or mislead appellant because the listing of robbery as a criminal objective and the specification of aggravated assault as an overt act notified him that the grand jury accused him of conspiring to inflict serious bodily injury upon the victims. (See *Commonwealth v. Brown,* supra at 70, 323 A.2d at 847 in which we stated that "the test for a sufficient indictment is whether the defendant is notified of the charge he is to meet.") Moreover, appellant's cross-examination of Commonwealth witnesses revealed that he rested his defense on a challenge to the Commonwealth's ability to identify him as a participant in the assaults. After the lower court allowed the Commonwealth to amend the indictment, appellant testified and adhered to his previous line of defense. He denied any knowledge of, or participation in, the assault on the two shopkeepers. Appellant does not allege how his cross-examination or testimony at trial would have differed if the original indictment had specified aggravated assault as a criminal objective. As our Court stated in *Commonwealth v. Watkins,* supra at 149, 361 A.2d at 658, I cannot detect "the slightest hint that this amendment surprised appellant or prejudiced [his] defense."

Appellant next contends that the lower court erred in instructing the jury to redeliberate and to "make sure that you have this done right" after one juror announced a verdict of not guilty during a poll of the jury. In the instant case,, the jury started its deliberations at 11:14 a. m. on December 12, 1976. At 9:55 p. m. the jury returned to the courtroom and the foreman announced a verdict of

guilty on all charges. Defense counsel requested that the court poll the jury. After the first seven jurors announced a guilty verdict on all charges, juror number eight responded "not guilty on the first count." The following interchange then transpired among juror number eight, juror number four and the trial court:

"THE COURT: Wait, do you understand the question?

"JUROR NO. 8: Yes, I do.

"THE COURT: Oh, then you have not reached a unanimous verdict?

"JUROR NO. 4: (To Juror No. 8) You did, did you?

"JUROR NO. 8: (To Juror No. 4) I found him on one count.

"THE COURT: Well, I think you have to go back out again and start deliberating again. Make sure that you have this done right. Okay, take them back to the room."

At 10:07 p. m., the jury exited. Defense counsel, the Assistant District Attorney, and the trial judge proceeded to the court's chambers where defense counsel moved for a mistrial because he believed that the trial court's instruction to "make sure that you have this done right" might unduly coerce juror number eight to change his vote to guilty. The court rejected this motion and stated that it sent the jury back out to reconsider "[b]ecause the other people will look at him like he's a dope. He dont' [sic] understand what he's talking about." The Assistant District Attorney observed that all the other jurors were confused by juror number eight's action: "I would like to note that all of the expressions on each one of their faces looking at—what is he talking about?" The trial court confirmed the Assistant District Attorney's impression and stated that the surprise displayed by the other jurors necessitated sending the jury "back out again to get the record straight.[8] At 10:43 the

8. I do not believe that the failure of appellant's counsel to ask for a curative instruction after the lower court denied his motion for a mistrial precludes our consideration of this claim. In the instant case, appellant's counsel promptly moved for a mistrial and notified

following morning, the jury returned to the courtroom and the foreman announced a verdict of guilty on all counts charged. Each juror when individually polled affirmed the verdict of guilty on all three bills of indictment.

In *Commonwealth v. Martin,* 379 Pa. 587, 109 A.2d 325 (1954), our Supreme Court held that a defendant in a criminal case has the right to poll a jury which has returned a guilty verdict. The court stated that: "The polling of the jury is the means for definitely determining, before it is too late, whether the jury's verdict reflects the conscience of each of the jurors or whether it was brought about through the coercion or domination of one of them by some of his fellow jurors or resulted from sheer mental or physical exhaustion of a juror." supra, 379 Pa. at 593, 109 A.2d at

the lower court that he specifically objected to the court's instruction "to make sure you have this done right." In response, the lower court stated: "Oh, come on, come on counsel. Don't get me angry for God's sake. I don't care what you put on the record, but don't give me that baloney. If I said right, I meant to clear it up, so that's it. It's going to be unanimous whatever it is. I don't care what it is." When counsel reiterated that he believed that the lower court's instruction was coercive, the following interchange ensued:

"THE COURT: I'm not even going to answer that except to deny your motion for a mistrial. That's stupid.

"[Counsel]: Thank you, sir.

"THE COURT: Well, it is stupid. Really stupid to make by you, there is nothing else I could do with the jury, but to send them back out to straighten out the record. There is nothing else I could do. There is nothing else I can say.

"[Counsel]: Well, with all due respect—

"THE COURT: Don't give me all that due respect, forget it. I moved on it. I made my decision. You take it up.

"[Counsel]: I certainly will, sir.

"THE COURT: Okay, fine, take it up."

This excerpt reveals quite clearly the lower court's marked antipathy towards counsel's argument. Under such circumstances, a request for a cautionary instruction would be a futile, foolhardy and ritualistic gesture. Cf. *Commonwealth v. Maloney,* 469 Pa. 342, 351, 365 A.2d 1237, 1242 (1976) (By overruling the trial counsel's objections, the trial court in effect said that the district attorney's remarks were proper. "Under such circumstances a motion for a mistrial would be an exercise in futility.") By his motion for a mistrial, appellant's counsel properly informed the lower court of the specific nature of his objection to the court's charge, thus affording the court an adequate opportunity to correct the impropriety. Cf. *Commonwealth v. Perkins,* 473 Pa. 116, 133, 373 A.2d 1076, 1084 n. 10 (1977).

328. See also, *Commonwealth ex rel. Ryan v. Banmiller,* 400 Pa. 326, 162 A.2d 354 (1960); *Commonwealth v. Watson,* 211 Pa.Super. 394, 236 A.2d 567 (1967); Rule 1120(f), Pa.R. Crim.P.; 19 P.S. Appendix, incorporates the guarantees of *Commonwealth v. Martin,* supra: "Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. If upon such poll there is no concurrence, except for a sealed verdict, the jury shall be directed to retire for further deliberations." See also *American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury,* § 5.5 at 158 (1968).

Rule 1120(f) allows a trial court to direct a jury that is not unanimous after polling to retire for further deliberations. While Rule 1120(f) does not specify what instructions a trial court should give when directing a jury to redeliberate, our appellate courts have held that: "[A] conviction will be reversed if the jury's verdict was effectively coerced by the trial judge's charge." *Commonwealth v. Spencer,* 442 Pa. 328, 335, 275 A.2d 299, 303 (1971); *Commonwealth v. Wilmer,* 434 Pa. 397, 254 A.2d 24 (1969); *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (1968). In particular, our Supreme Court in *Commonwealth v. Spencer,* supra, repudiated the so-called *Allen* charge, based on *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), which emphasized that "jurors in the minority [on a deadlocked jury] should both listen with deference to the jurors in the majority and re-examine their minority position." *Commonwealth v. Spencer,* supra, at 336, 275 A.2d at 303. By implication, the *Allen* charge informed the majority of jurors that they need not re-examine their position despite the existence of a reasonable doubt in the mind of a minority juror. Our Supreme Court noted that the *Allen* charge could coerce dissenting jurors to change their votes and was, therefore, contrary to the hallowed tradition of trial by jury secured by both our federal and state constitutions. U.S. Const., art. III, § 2 and amend. VI; Pa.Const., art. I, § 6. As a substitute for the *Allen* charge when a jury is dead-

locked, the Court commended an instruction approved by the American Bar Association.[9] This charge stresses that no juror should surrender his honest conviction as to a defendant's innocence or guilt solely because of the opinion of other jurors, or for the mere purpose of returning a verdict. The instruction urges conscientious reconsideration by *all* jurors and does not unfairly isolate and coerce the minority of jurors not convinced by the Commonwealth's presentation.

In the instant case the trial court quite properly exercised its discretion to require the jury to redeliberate after juror number eight indicated that he believed appellant not guilty. Rule 1120(f), supra; American Bar Association Project on Minimum Criminal Standards, Standards Relating To Trial By Jury, § 5.5 (1968). However, its admonition to "make sure that you have this done right" was tantamount to the disfavored *Allen* charge. In *Commonwealth v. Holton,* 432 Pa. 11, 19, 247 A.2d 228, 232 (1968), our Supreme Court reviewed a potentially coercive statement by a trial court and stated: "It is not for us to determine the court's intent in making this statement or the jury's inference from it. What is significant is that both interpretations are equally

**9.** American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating To Trial By Jury, § 5.4(a) and (b). This section provides:

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals."

plausible. More importantly, individual jurors might have concluded . . . that the court was threatening them with the wrath of God should they bring in a verdict of not guilty." See also *Commonwealth v. Wilmer,* 434 Pa. 397, 254 A.2d 24 (1969). In the instant case, juror number eight could reasonably believe that the lower court specifically directed this comment at him in order to induce him to change his vote. In fact, the potential coercive impact of the trial court's statement is greater than an *Allen* charge delivered to a deadlocked jury because in the case at bar juror number eight revealed publicly that he was the sole dissenting juror. The comments of juror number four during the polling and the statements of the lower court and the Assistant District Attorney after the polling indicate that the other members of the jury registered incredulity and disdain when juror number eight announced his vote. When a juror has publicly identified himself as the lone voter favoring acquittal, it is particularly important that the trial court instruct that *every* juror, not just the minority juror, should reconsider his views and that after reconsideration *every* juror should adhere to his honest convictions as to the defendant's innocence or guilt, despite pressures arising from the opinions and cohesiveness of his fellow jurors.[10] Such instructions are necessary to minimize the coercive potential inherent in the isolated and public position of a juror who votes not guilty during a jury poll.[11] Because the

10. In *Commonwealth v. Burton,* 164 Pa.Super. 158, 63 A.2d 508 (1949), the trial court instructed a jury to redeliberate and to see if it could not reach a unanimous verdict after one juror announced a not guilty verdict during a jury poll. Fifteen minutes later the jury returned with a guilty verdict. Our Court affirmed the conviction. However, *Burton* is no longer persuasive authority because our Supreme Court has since recognized the coercion inherent in a jury charge that isolates minority jurors and does not require *all* jurors to reconsider conscientiously their positions.

11. In *Kramer v. Kister,* 187 Pa. 227, 236, 40 A. 1008, 1010 (1898) our Supreme Court stated: "If the dissenting juror was honest in his declaration that he had not agreed to the first verdict, except because he thought he was obliged to, then his agreement to the second without having been instructed as to his rights cannot be freed from a well-founded appearance of coercion." This comment is particu-

trial court's statement may have coerced juror number eight to change his vote to guilty. I would vacate the judgments of sentence and grant appellant a new trial.[12]

SPAETH, J., joins this opinion.

CERCONE, Judge, in support of reversal:

I agree with Judge Hoffman that appellant is entitled to a new trial largely because of my opinion in *Commonwealth v. Pemberton,* 256 Pa.Super. 297, 389 A.2d 1132 (J. 1196/1976). It is clear to me that any uptoward implication in the court's remark "make sure you have done this right," could have been readily removed by a curative instruction, perhaps merely a reiteration of the ABA standard to which the majority refers in its opinion. Indeed, the trial court had so instructed the jury before it first retired to deliberate. On the other hand, the court's dialogue with counsel following the mistrial motion establishes that such a request would have been futile in the instant case.

larly apposite to the case at bar. See also *Commonwealth v. Corbin,* 215 Pa.Super. 63, 257 A.2d 356 (1969); *Commonwealth v. Watson,* supra.

12. The case at bar may be distinguished from *Commonwealth v. Pemberton,* 256 Pa.Super. 297, 389 A.2d 1132 (1978). In *Pemberton,* after a juror announced a not guilty verdict, the trial court directed the jury to redeliberate in the following language: "All right, the jurors will resume their deliberations." This language did not constitute a potentially coercive charge, and appellant's counsel did not request the ABA approved instructions in order to dispel any coercion inherent when a jury poll reveals a non-unanimous jury. In the instant case, the trial court's warning to "make sure that you have this done right" was potentially coercive in and of itself; counsel properly objected to this charge.