J-S62013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONY RUFUS RATCLIFF, III | : | |
| | : | |
| Appellant | : | No. 181 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001043-2018

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:                **FILED FEBRUARY 3, 2020**

Tony Rufus Ratcliff, III appeals from the judgment of sentence entered in the Erie County Court of Common Pleas following his conviction for possession with intent to deliver ("PWID") heroin, and possession of a controlled substance. Ratcliff argues the trial court erred when it permitted an amendment to the criminal information, and challenges the sufficiency of the evidence supporting his conviction for PWID. We affirm.

In August of 2017, Ratcliff was charged with Count 1 – Delivery of a controlled substance to inmate (heroin), Count 2 – Possession of Controlled Substance by inmate (heroin), Count 3 – Unlawful Delivery of Controlled Substance to inmate (heroin), Count 4 – PWID (Suboxone), and Count 5 – Possession (Suboxone). The trial court summarized the facts giving rise to those charges as follows.

In the early morning hours of August 5, 2017, [Ratcliff] was arrested and taken to the Erie County Prison (ECP) on unrelated charges at a different docket. Upon arrival at the ECP, [Ratcliff]'s person and property were searched and three suboxone strips were recovered from his wallet. [Ratcliff] was not prescribed suboxone, and when questioned by the intake nurse why he was in possession of the strips [Ratcliff] told her he sold them.

Later in the day on August 5, 2017, inmate Ian Welden was in the day room of Bravo Pod (B Pod) in the ECP when he was approached by [Ratcliff] and asked if he was looking for anything. Welden responded "yeah, maybe" and [Ratcliff] said he had some "H". Welden, an active heroin user, understood this to mean [Ratcliff] had heroin. Welden and [Ratcliff] arranged for the transaction to occur later in the evening before lockdown at 10:00 p.m. At the designated time, [Ratcliff] arrived at Welden's cell and gave him "a match head's worth of powder in plastic." In exchange, Welden gave [Ratcliff] a bag of coffee and planned to repay the rest in commissary items the next day. Welden then snorted the "offwhite or brownish" powder in his cell after lockdown.

On the morning of August 6, 2017, Officer Christopher Fraser discovered Welden in his jail cell breathing but unresponsive. Officer Fraser radioed the code for medical emergency. Officer Adam Merchant, one of the responding officers and a trained EMT, assisted in transporting Welden to UPMC Hamot Hospital (Hamot). At Hamot, Officer Merchant observed the medical staff trying to figure out what was going on with Welden for approximately two hours before Narcan was administered. Officer Merchant confirmed that within minutes of receiving the Narcan, Welden began to "mumble things and speak to us and come to it a little bit." Officer Merchant asked Welden what happened and Welden admitted to snorting something. Officer Merchant asked for a description of the individual who had provided the substance to him and Welden stated he "got something from a short, husky, black man in 21 cell." Upon receiving this information, Officer Merchant called the jail to advise it was a drug-related incident and later documented the description provided by Welden in a written report.

After receiving the information that Welden had suffered a drug overdose, Captain Mitchell Carman initiated an investigation of B Pod. He directed officers at the ECP to conduct a search of B Pod

and the rest of the facility and to begin interviewing inmates. In the meantime, Captain Carman equipped himself with a body camera and went to Hamot to interview Welden. According to the description Welden provided in the recorded interview regarding the person who provided the substance that caused his overdose, the individual was a "large, bald, black man who came in a few days prior – a day or two prior and had been in a traffic stop who was in the back of the pod somewhere." Welden also provided a written statement, admitted as Commonwealth Exhibit 6, stating Friday night before lockdown a large black guy with a bald head asked him if he wanted any H. With this information, Captain Carman returned the ECP and cross-referenced the housing sheets for B Pod to determine which inmates matched the description. Captain Carman determined [Ratcliff], being housed in cell B-22, was the only possible match.

Captain Carman directed interviews be conducted with several inmates from the back of B Pod and that [Ratcliff] and his cellmate be removed from cell B-22. Captain Carman and Officer Scott Gorring conducted a "shakedown" of cell B-22 to search for contraband. Wedged into a bracket welded to the concrete wall on the upper right-hand side of the top bunk, [Ratcliff]'s bunk, Captain Carman recovered a wad of toilet paper wrapped around three separate pieces of plastic each containing a "brown substance". At trial, Commonwealth Exhibit 7, a video recording from Captain Carman's body-cam depicting him opening the toilet paper and finding the plastic bag corners and substance, was admitted. Forensic analysis revealed the substances contained heroin, fentanyl, and carfentanil.

After the discovery of the drugs [Ratcliff] was placed in a dry cell. At approximately 6:30 p.m. on August 6, 2017, Captain Carman conducted a recorded interview with [Ratcliff]. During this interview, [Ratcliff] denied possessing any contraband. On August 7, 2017, [Ratcliff] requested to speak with Captain Carman again. Another recorded interview took place and this time [Ratcliff] advised Captain Carman another inmate had given him a controlled substance to hold. [Ratcliff] does not dispute he hid the wad of toilet paper between his bed frame and the wall in his cell, B-22. [Ratcliff] completed a witness statement after the recorded interview but tore it up shortly after filling it out.

Detective Todd Manges of the Erie County District Attorney's Office conducted a follow-up interview with Welden on November

21, 2017. During that interview, Welden again described the individual who gave him the substance that caused his overdose as a "black, husky, male with a bald head" and stated he believed his name was Ratcliff. After Welden's statements, Detective Manges showed Welden a booking photograph of [Ratcliff] and Welden positively identified him as the perpetrator.

Trial Court Opinion, at 1-4 (internal record citations omitted).

Prior to trial, the Commonwealth filed a motion in limine requesting to amend the information. The charges were amended at Count 4 to PWID (heroin) and at Count 5 to Possession (heroin).

Following a three-day trial, a jury convicted Ratcliff of Count 4 – PWID (heroin) and Count 5 – Possession (heroin).[1] Ratcliff was thereafter sentenced to a period of twenty-four to eighty-four months' incarceration. He filed a *nunc pro tunc* post-sentence motion to reconsider or modify sentence, which the court denied. This timely appeal followed.

First, Ratcliff contends the trial court erred in granting the Commonwealth's motion in limine to amend the criminal information as to Count 4 to reflect the controlled substance at issue for the PWID charge was heroin and not suboxone as originally charged. The decision whether to allow the Commonwealth to amend an information is a matter within the discretion of the trial court. Only an abuse of discretion will constitute reversible error. *See Commonwealth v. Small*, 741 A.2d 666, 681 (Pa. 1999). "An abuse of

---

[1] The jury was hung and a mistrial was declared as to Counts 1, 2, and 3. Ratcliff filed a motion for judgment of acquittal as to those counts. The court denied the motion.

discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." *Simmons v. Simmons*, 723 A.2d 221, 222-223 (Pa. Super. 1998).

Pennsylvania Rule of Criminal Procedure 564 permits the trial court to amend an information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. Moreover, "[u]pon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice." *Id*. "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006) (citation omitted). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." *Commonwealth v. Grekis*, 601 A.2d 1284, 1289 (Pa. Super. 1992).

When presented with a question concerning the propriety of an amendment, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to

have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Sinclair*, 897 A.2d at 1221 (citation omitted).

The factors the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id*., at 1223 (citation omitted).

Ratcliff argues the amendment prejudiced him because the factual scenario supporting the charges changed and he did not have time to prepare a defense to the amended charge*.* However, Ratcliff was aware from the time of the original information that he was being charged with multiple counts related to heroin; specifically, that he was alleged to have sold heroin to a fellow inmate and that heroin was found in his cell after a search. Further, although Pa.R.Crim.P. 564 allows for a continuance in order to prepare for the new information, no such request was made by Ratcliff. ***See Commonwealth v. Fowler***, 393 A.2d 844, 847 (Pa. Super. 1978) (finding failure to request

continuance after information amended supports a conclusion that amendment caused no prejudice).

Under these circumstances, we conclude Ratcliff has not established prejudice. Ratcliff was clearly aware of the facts underlying the charges in the amended complaint from the time charges were brought against him. *See* Appellant's Brief, at 12 ("It is true that the drugs subsequently discovered in the Appellant's cell were included as part of the defense to count 3").

Although there are enhanced penalties for a conviction involving heroin over suboxone, the mere possibility that amendment of an information may result in a more severe penalty due to the additional charge is not, of itself, prejudice. *Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super. 1991). Therefore, as we find Ratcliff had notice of the facts surrounding the amended information and was not prejudiced by the amendment, we find the trial court did not err in allowing the amendment. Accordingly, Ratcliff is due no relief on his first issue.

Next, Ratcliff challenges the sufficiency of the evidence in support of his conviction for Count 4 – PWID (Heroin). Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917-918 (Pa. Super. 2012) (citation omitted).

In relevant part, the Controlled Substance, Drug, Device and Cosmetic Act prohibits the following acts:

[T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780.113(a)(30). To sustain a conviction for PWID "all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence." *Commonwealth v. Little*, 879 A.2d 293, 297 (Pa. Super. 2005) (citation omitted).

Ratcliff argues that the evidence was insufficient because the Commonwealth failed to prove he knew the illegal drugs were in his cell or that he planned to deliver them. "In order to convict a defendant of PWID, the Commonwealth must prove that the defendant possessed a controlled

substance and did so with the intent to deliver it." ***Commonwealth v. Sarvey***, 199 A.3d 436, 450 (Pa. Super. 2018) (citation and internal quotation marks omitted). Here, Ratcliff admitted on the record that he had a controlled substance in his cell. ***See*** N.T., Jury Trial Day 3, 11/19/2018, at 31-32.[2] Further, the record includes testimony from another inmate that Ratcliff sold heroin to him in prison, which caused him to overdose. ***See*** N.T., Jury Trial Day 2, 11/16/2018, at 30-36, 39-41. Finally, the record includes testimony from an intake nurse indicating Ratcliff had other drugs in his possession (suboxone) upon entry into the prison, and that he specifically indicated he possessed the drugs in order to sell them. ***See id.***, at 124-125. Therefore, the finder of fact had sufficient evidence to conclude by circumstantial evidence that Ratcliff possessed heroin *and* intended to sell it. Based on the totality of

---

[2]

> [Commonwealth]: So when he says contraband, you say what contraband?
>
> [Ratcliff]: Hm-hmm.
>
> [Commonwealth]: You know exactly what contraband he's talking about?
>
> [Ratcliff]: I know that I had contraband, yes.
>
> [Commonwealth]: And so when you say what contraband, you would be misleading Captain Carman?
>
> [Ratcliff]: Yes.

N.T., Jury Trial Day 3, 11/19/2018, at 31-32.

the evidence established at trial, we find Ratcliff's challenge to the sufficiency of the evidence to support his conviction of PWID to be without merit.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2020