670 A.2d 183

COMMONWEALTH of Pennsylvania, Appellee,

v.

Herman EDMONDSON, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 10, 1995.

Filed Jan. 19, 1996.

Joseph P. Burt, Erie, for appellant.

Robert A. Sambroak, Jr., Assistant District Attorney, Erie, for Commonwealth, appellee.

Before CIRILLO, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Erie County on June 23, 1994, following appellant's conviction on charges of possession of a controlled substance, possession of a controlled substance with the intent to deliver, aggravated assault and resisting arrest. Appellant was sentenced consecutively to forty-two (42)

months to ten (10) years for possession with intent to distribute a controlled substance and eighteen (18) months to ten (10) years for the aggravated assault charge.[1] Appellant herein questions whether he was denied a fair trial because the trial court improperly instructed the jury.[2] Upon review, we find the trial judge's instruction to be coercive thereby denying appellant his right to a fair trial. Appellant also argued that the evidence presented was insufficient to sustain the verdict. We disagree that the evidence was insufficient and adopt the trial court opinion which correctly and thoroughly disposed of this issue. [Trial Court Opinion, pp. 5–7] Accordingly, we reverse the judgment of sentence and remand for a new trial.

The facts of this case are as follows: On April 8, 1993, at approximately 3:30 a.m., Erie Police Officer Tom Eberlein was on patrol when he observed a car which was traveling west on 23rd Street make a right turn and head north on State Street at a high rate of speed. The car then went through a red light while turning left at 21st and State Streets. At this time, Officer Eberlein turned on his lights, pursued the vehicle and called for backup. The officer chased the vehicle for three blocks at a rate of sixty to seventy miles per hour in an area with a speed limit of twenty-five miles per hour. The vehicle ran two more red lights before jumping a curb and coming to a stop among a tree, a telephone pole and a stop sign. Four of the five occupants exited the car and ran. Officer Eberlein chased the closest passenger, appellant, initially by vehicle and then by foot. During the pursuit, Officer Eberlein observed appellant reach into his pocket and pull out something. Appellant ran with the object in his hand before dropping it in the vicinity of 20th and Myrtle. The officer continued to chase appellant and eventually tackled him and wrestled him to the ground. While twisting to get away from the officer, appellant threw his arm back and struck the officer in the nose.

1. The possession of a controlled substance conviction merged with the count of possession with intent to deliver, and the resisting arrest conviction merged with the aggravated assault count.

2. Appellant also raised the following issues which we need not address: whether the verdict was against the weight of the evidence; and whether the sentence imposed was manifestly excessive.

Shortly thereafter, additional officers arrived and handcuffed appellant. Officer Eberlein showed them the area where the object was dropped, and a prescription pill vial was found. The contents of the vial were determined to be thirty-two rocks of crack cocaine. Appellant had $743.00 in his possession at the time of arrest.

At trial, the jury began their deliberations at 4:45 p.m. and returned to the courtroom with a question at 6:00 p.m. The jury asked the judge if the injury to the officer was more accidental than intentional, was it still aggravated assault. The judge responded by rereading the legal definition of aggravated assault on a police officer. The jury continued its deliberations until 6:20 p.m. when it returned with another question. The jurors wanted to know what would happen to the other three charges if they could not reach a verdict on one of them. Learning upon which charge they could not agree, the judge stated the following:

> The aggravated assault. If you cannot reach a verdict, you mean you would be a hung jury. I am the one who declares whether you're a hung jury or not. *This case is about as straight-forward as you can ever get. I am not going to hang this jury. So you'll deliberate until I feel that you can't deliberate anymore.* Now, please do what I've instructed you to do. Find the facts from the evidence and apply them to the law, just the facts. Not theory, ifs ands or buts. This has been a short trial, the evidence is quite clear, *you have one or two people to believe basically. I'm not going to hang you on that charge.* Let's go back, do your job as responsible jurors.

Following the judge's order, the jury deliberated for approximately one hour more before finding appellant guilty on all charges.

The question presented to this court is whether the above instruction to the jury was coercive, resulting in an unfair trial for appellant. Upon review, we find that the trial judge abused his discretion by issuing a coercive instruction to the jury.

 Initially, we note that our standard for reviewing the propriety of statements made by the trial court in its jury charge "is limited to a determination of whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Cook,* 383 Pa.Super. 615, 557 A.2d 421, 424 (1989) (quoting *Cucchi v. Rollins Protective Services,* 377 Pa.Super. 9, 546 A.2d 1131, 1136 (1988)).

The law regarding judicial coercion was defined by the United States Supreme Court in the landmark case *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In *Allen,* the Supreme Court stated that "[w]hile, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments *among the jurors themselves." Id* (emphasis added). Furthermore, it is within the trial judge's discretion to determine the length of time a jury deliberates. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, 1380 (1991). However, "[i]t is well established that a verdict brought about by judicial coercion is a legal nullity." *Id.*

Although the principles of *Allen* remain intact, our Supreme Court found the charge given to the jury in *Allen* to be coercive.[3] *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971). In *Spencer,* our Supreme Court saw two possible implications of the *Allen* charge: "(1) a minority juror should yield to the majority; and (2) those with no reasonable doubt,

**3.** In *Allen,* the trial judge instructed the jury substantially as follows:
[I]n a large proportion of cases[,] absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself.
*Allen, supra* at 501, 17 S.Ct. at 157.

i.e., the majority, need not re-examine their position despite the existence of a reasonable doubt in the mind of a minority juror." *Id* at 303–304. These notions were seen to be contrary to both the federal and state constitutional right to trial by jury. *Id.* (referring to U.S. Const. art. III, § 2 and amend. VI; Pa. Const. art. I, § 6, P.S.). It is quite clear that a conviction will be reversed upon the finding that a jury charge had the coercive effect of *Allen. Spencer,* 275 A.2d at 303.

In *Commonwealth v. Hammond,* 350 Pa.Super. 477, 504 A.2d 940, 941 (1986), the appellant alleged judicial coercion based on the following three sentences of the trial judge's instruction: "You cannot be discharged from your duties until you have reached a unanimous verdict; . . . each juror should not hesitate to re-examine his or her own view; . . . come back with a verdict." The reviewing court responded that if these three sentences were the sum total of the judge's instructions, it might find coerciveness. *Id.* However, the court did not find coerciveness because, in addition to the above three sentences, the trial judge repeatedly told the jurors that they should not give in to their peers for the sake of ending the trial. *Id.*

More recent cases illustrate judicial action which does not rise to the level of judicial coercion. In *Commonwealth v. Chester,* the jury indicated difficulty in reaching a decision two times during thirteen hours of deliberation. Each time, the judge returned the jurors to the jury room for further deliberation. The court found no abuse of the trial judge's discretion because at each break in deliberation, the judge expressly told the jury that if it found agreement to be hopeless, it was free to return. *Chester,* 526 Pa. 578, 587 A.2d 1367. Similarly, in *Commonwealth v. Bazabe,* 404 Pa.Super. 408, 590 A.2d 1298, 1300 (1991), the court dismissed an allegation of judicial coercion where the trial judge encouraged the jury to reach a verdict, yet told the jurors that "you are not required to relinquish your position if you think you are right in whatever results you in your own mind have reached." [4]

---

4. *See also, Commonwealth v. Fowler,* 259 Pa.Super. 314, 393 A.2d 844 (1978) (The trial court told an undecided jury that "I think you have to

As noted in *Hammond,* "we cannot base a finding of error on isolated sentences that are without context; it is the effect of the jury charge of a whole that is controlling." *Hammond,* 504 A.2d at 941. In the present case, the judge's instruction, *viewed in its totality,* had the same effect as the three sentences in *Hammond.* The distinction being that, in this case, the judge did not give the accompanying instruction that jurors need not abandon their opinion.[5] By explicitly forbidding a "hung" jury and saying, "you'll deliberate until I feel that you can't deliberate anymore", the trial judge gave dissenting jurors the option to accept the opinion of the majority or remain in deliberation indefinitely. This implication is coercive for precisely the same reasons that *Spencer* criticized the *Allen* charge. The judge's instruction could have coerced a minority juror to abandon his or her reasonable doubt and yield to the majority for the sake of concluding the trial.

Perhaps even more improper, the judge expressed his displeasure with the jury's indecision on the aggravated assault charge when he told them that "this case is about as straightforward as you can ever get . . . this has been a short trial, the evidence is quite clear, you have one or two people to believe basically . . . I'm not going to hang you on *that charge.*" Through this statement, the judge virtually conveyed his own opinion that appellant should be found guilty of aggravated assault. Moreover, as previously stated by this court, "individual jurors might have concluded . . . that the court was threatening them with the wrath of God should they bring in a verdict of not guilty." *Fowler,* 393 A.2d at 852 (quoting *Commonwealth v. Wilmer,* 434 Pa. 397, 254 A.2d 24 (1969).

 It is difficult to imagine a clearer display of judicial coercion than occurred in the present case. It is the jury's duty to consider all of the evidence and reach a unanimous

go back out again and start deliberating again. *Make sure that you have this done right."* Amongst a divided court, three judges voted to reverse stating that the trial court's admonition was "tantamount to the disfavored *Allen* charge." *Id.* at 852).

5. Although the trial court did give such an instruction prior to deliberation, we find that the instruction in question nullified any effect the prior instruction may have had.

verdict. This verdict should reflect the opinion of each juror and should not be tainted by the judge's refusal to "hang" the jury nor his own opinion of the case. When reviewing the trial court's charge as a whole, we conclude that the trial court abused its discretion when it improperly demanded a verdict and implicitly conveyed its own opinion of the case.

█ We note that this court is sympathetic to the judge's discouragement of a "hung" jury due to the additional time and expense it entails. Further, it is clearly within the trial judge's discretion to attempt to avoid such a situation by returning the jury for further deliberation. *Commonwealth v. Boyles*, 407 Pa.Super. 343, 595 A.2d 1180, 1185 (1991). However, it would be more proper to encourage the jury to reach a verdict than to forbid a "hung" jury. We reiterate the recommendation of our Supreme Court concerning the proper instruction to be given to a deadlocked jury.[6] In essence, this charge would emphasize that, while a verdict is encouraged, no juror should relinquish an honest opinion based solely on the opinion of other jurors or for the purpose of returning a verdict.

**6.** The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating To Trial By Jury, § 5.4(a) and (b) provide:

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:
(i) that in order to return a verdict, each juror must agree thereto;
(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
*Spencer*, 275 A.2d at 304; *Fowler*, 393 A.2d at 851–852.

In sum, we find the trial judge's jury instruction to be coercive, thereby denying appellant his right to a fair trial. Accordingly, we reverse the judgment of sentence in totality[7] and remand for a new trial free from the taint of judicial coercion.

Judgment of sentence reversed. Case remanded for a new trial in accordance with this opinion. Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting.

I wholeheartedly agree that a verdict which has been elicited through judicial coercion must not be allowed to stand. In finding such coercion, however, the majority states that "the trial court abused its discretion when it improperly demanded a verdict and implicitly conveyed its own opinion of the case." Majority opinion at 603. I cannot agree with either conclusion.

The majority writes that:

the judge expressed his displeasure with the jury's indecision on the aggravated assault charge when he told them [sic] that "this case is about as straightforward as you can ever get ... this has been a short trial, the evidence is quite clear, you have one or two people to believe basically ... I'm not going to hang you on *that charge.*" Through this statement, the judge virtually conveyed his own opinion that appellant should be found guilty of aggravated assault. Moreover, as previously stated by this court, "individual jurors might have concluded ... that the court was threatening them with the wrath of God should they bring in a verdict of not guilty."

*Id.* (citations omitted).

A plain reading of the trial judge's remarks reveals that they were clearly neutral. In no way did the judge express an opinion as to Edmondson's guilt. Moreover, the judge was

7. We reverse the judgment of sentence on all charges because it is impossible to tell from the record whether the trial judge's comments tainted the jurors' verdict on the other charges as well.

correct in stating that the jury only had one or two people to believe concerning the aggravated assault charge. Only two people were present during the alleged assault: Edmondson and the arresting officer, Thomas Eberlein, Jr. Thus, the jury either had to believe Officer Eberlein, who testified that Edmondson had struck him in the nose, or Edmondson, who testified that he never hit the lawman. The trial judge never expressed to the jury a personal preference as to who he believed was more credible. Consequently, I cannot join the majority in concluding that the trial judge "threatened [the jurors] with the wrath of God should they bring in a verdict of not guilty."

The majority also finds that the judge improperly forced the jury into reaching a verdict. Again, I must disagree. First, I do not believe that the trial judge's supplemental comments, taken in isolation, require reversal of this case. My research has not revealed, nor has the majority cited to, any case in this Commonwealth in which it was held that the trial court improperly bullied the jury into reaching a verdict. In fact, historically, trial courts have been given great latitude in this area. In *Commonwealth v. Tenbroeck*, 265 Pa. 251, 108 A. 635 (1919), our Supreme Court stated

> The jury, after 48 hours' deliberation, came into court and reported their inability to agree upon a verdict, whereupon the trial judge explained the nature of the case and importance of reaching a verdict and said, **"you must agree,"** but added
>
>> If some one of you should become physically unable to remain, the situation would be different; but **as long as you are physically able to remain, it is your duty to undertake to agree.**
>
> He also expressed great sympathy for the jury, and enjoined them to continue their deliberations. Considering, as we must, all that the judge said, it **did not constitute such a coercion of the jury as to invalidate the verdict.**

265 Pa. at 256–57, 108 A. at 637 (emphasis added).

Further, in *Commonwealth v. McCoy*, 219 Pa.Super. 298, 279 A.2d 237 (1971), this Court affirmed appellant's judgment

of sentence where the trial court instructed the jury that "I trust that you will find your task not one of which you are hopelessly divided ... [s]hould you be unable to .agree, as disappointing and undesirable as such disagreement might be ... [v]erdicts are very important in this case." 219 Pa.Super. at 303, 279 A.2d at 239. Finally, in *Commonwealth v. Fowler*, 259 Pa.Super. 314, 393 A.2d 844 (1978), the judge told an undecided jury that "I think you have to go back out again and start deliberating again. Make sure that you have this done right." 259 Pa.Super. at 317, 393 A.2d at 845. There, six judges of this Court were equally divided and, consequently, appellant's judgment of sentence was affirmed. The three judges who voted to affirm, however, found that "the statement of the trial judge cannot be said to have had the coercive impact on jurors in this case similar to the '*Allen*' type charge." *Id.* at 318–19, 393 A.2d at 846. In light of the above, it is clear that our state's appellate courts have demonstrated a preference for allowing the trial court wide latitude in this area. As such, I cannot find that, in the instant case, the trial judge's supplemental comments, when taken in isolation, require that the jury's verdict be rendered void.

Even if the judge's supplemental comments were alone coercive, the verdict must still stand. In *Commonwealth v. Hammond*, 350 Pa.Super. 477, 504 A.2d 940 (1986), this Court stated that

> we cannot base a finding of error on isolated sentences that are without any context; it is the **effect of the jury charge of a whole that is controlling.** When the jury instructions are read as a whole, it is clear that the dissenting jurors were not coerced into adopting a view not truly their own. The judge stated repeatedly that the jurors should not give in to their peers simply for the sake of ending the trial; "... none of you should surrender an honest conviction ... merely for the purpose of reaching a verdict." While this might not be quite as strong as stating outright that jurors are free to disagree, such explicit language is not a necessary part of jury instructions.

350 Pa.Super. at 480, 504 A.2d at 941 (emphasis added) (citations omitted).

Instantly, prior to uttering the remarks that the majority has found offensive, the trial court originally instructed the jury as follows:

> Your verdict must be unanimous. That means in order to return to this court with a verdict, each of you must agree to [that] verdict. You have a duty to consult with each other with a view towards reaching an agreement, **but only if you can do so without doing any violence to your own individual judgment. Each of you must decide this case for him or herself.** But only after there has been fair and impartial deliberation with your fellow jurors.
>
> In the course of deliberation each juror should not hesitate to reexamine his or her view or change his or her mind if convinced it is erroneous. However, **no juror should surrender the weight or effect of their conviction merely because it may differ from their fellow jurors or they might be in the minority or for the mere purpose of returning a unanimous verdict.**

N.T. 5/11/94, at 177–178 (emphasis added).

Incredibly, the majority totally discounts the above statements, finding instead that "the instruction in question nullified any effect the prior instruction may have had." Majority opinion at 602. I disagree. The jury had been deliberating for only an hour and a half when the judge informed it that he would not declare it hung. In light of the proximity of the judge's original instructions to his questioned comments, it is clearly not only proper, but also necessary, to review the former in determining the latter's effects upon the jury. As such, in reading the jury charge as a whole, I cannot find that the trial court "committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Cook,* 383 Pa.Super. 615, 620, 557 A.2d 421, 424 (1989) (quoting *Cucchi v. Rollins Protective Services,* 377 Pa.Super. 9, 20, 546 A.2d 1131, 1136 (1988)).

Finally, even ignoring all of the above, the majority's decision is still flawed. Regardless of whether the trial court's instruction was, in fact, proper, my review of the record indicates that Edmondson failed to object to the questioned statements. As such, this issue has been waived. In *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), our Supreme Court stated

> The proper functioning of our guilt determining process neither requires nor assures a defendant an errorless trial. A defendant is, however, entitled to a fair trial free of such trial errors as his trial counsel timely sought to have corrected by calling them to the court's attention. Trial errors are made in the courtroom and it is there that the correction process should at least be **initiated.**

> The defense may not successfully complain of trial errors for the first time only **after** the jury has returned a verdict of guilty, unless the errors were initially challenged at trial, and thereby preserved on appeal.... [To hold otherwise] encourages defense counsel to sit by silently without calling errors to the trial court's attention until after the guilty verdict is returned. [Such an] approach places the appellate court in the role of a super-trial-defense counsel.

458 Pa. at 420, 326 A.2d at 273 (emphasis original) (quoting *Commonwealth v. Williams*, 432 Pa. 557, 569–570, 248 A.2d 301, 307 (1968) (Roberts, J., dissenting)). Further, in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), our Supreme Court stated that

> The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error.... Failure to interpose a timely objection at trial denies the trial court the chance to hear argument on the issue and an opportunity to correct error....

> Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct

alleged errors at trial advances the orderly and efficient use of our judicial resources.

457 Pa. at 257–59, 322 A.2d at 116.

In light of the above, it is clear that, by failing to object to the trial court's statements, Edmondson has waived this issue for appeal. *Commonwealth v. Wallace,* 475 Pa. 27, 379 A.2d 558 (1977); *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974); *Clair, supra; Dilliplaine, supra; Commonwealth v. Weaver,* 384 Pa.Super. 231, 558 A.2d 97 (1989), *alloc. denied,* 524 Pa. 627, 574 A.2d 69 (1990). The majority rewards the defendant's dereliction by granting him a new trial. This is clearly inappropriate.

Since I am convinced that the majority's approach is deficient on a number of grounds, I must dissent.