687 A.2d 1131

**COMMONWEALTH of Pennsylvania**

v.

**Myron MONTGOMERY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 1996.

Filed Dec. 26, 1996.

Edward C. Greco, Kulpmont, for appellant.

Robert B. Sacavage, District Attorney, Mt. Carmel, for Commonwealth, appellee.

Before FORD ELLIOTT, SAYLOR, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Following a jury trial, appellant, Myron Montgomery, was convicted of rape, aggravated indecent assault and indecent assault. He now appeals from the judgment of sentence.

On December 3, 1994, JH and her friend LL, both minors, were visiting with friends in the Milton Village apartment complex. While there, the girls were introduced to appellant. Over the course of the next several hours, appellant made a

number of sexual advances towards LL. His overtures were rebuked, however, and appellant turned his attention towards JH.

After chatting casually for a brief time and taking a short walk to a local convenience store, JH agreed to accompany appellant to his apartment, which was located in the same housing complex. Prior to walking with appellant to his apartment, JH gave appellant a piece of paper with her name and phone number on it.

There were several people congregated in appellant's living room and kitchen listening to music and smoking marijuana, and appellant asked JH to go upstairs with him to his bedroom. JH told appellant that she had to leave and began to walk away.

Appellant followed JH out of his apartment and enticed her back inside, again asking her to join him upstairs. JH complied and walked to the top of the staircase with appellant. At that time, appellant pulled JH towards him and kissed her. JH attempted to push appellant away and told him that she wanted to return to her friend. Appellant, however, continued to grab and kiss JH and then picked her up and carried her into his bedroom. JH tried to squirm away from appellant and to grab onto the door jam, but her attempts were futile.

Once inside the bedroom, appellant pushed JH onto his bed and removed most of her clothing. After being told to do so by appellant, JH removed her own shirt. JH began to scream for help and repeatedly told appellant to stop. In response to this, appellant placed his hand over JH's mouth and throat area and threatened to kill her if she didn't stop screaming. Appellant then removed his own clothes and raped JH.

Afterwards, appellant told JH that she "probably wouldn't like him anymore," and asked if he could walk her back to her friend's apartment. JH complied, but then half way to the apartment, told appellant that she would walk the rest of the way herself. Appellant asked JH if he could kiss her, and JH agreed.

JH then told her friend that she had been raped and the police were called. Appellant was placed in custody and interrogated for several hours. After initially maintaining that JH consented to having sex, appellant confessed that he forced JH to have sex with him and gave both written and videotaped oral statements to the police.

An examination conducted at Evangelical Community Hospital revealed that JH had bruising on her neck as well as a severe perineural laceration which required suturing to stem the blood-flow.

In appealing the judgment of sentence, appellant presents a number of issues for our review. Appellant argues that: 1) the Commonwealth failed to sustain its burden of proof with respect to the threat of forcible compulsion element of the rape charge; 2) the trial court erred in admitting the testimony of LL relative to appellant's advances towards her earlier on the evening in question; 3) the trial court erred in instructing the jury that deadlock as to two of the counts would mean the possibility of a retrial and would entail additional delay and expense; 4) the lower court erred in permitting a Commonwealth witness to use personal notes while testifying and 5) the sentence of the trial court was illegal because the rape and aggravated indecent assault convictions should merge for sentencing purposes.[1]

With respect to appellant's initial claim, that of insufficient evidence to sustain the rape conviction, our standard of review is well settled. This Court must view the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth, as verdict winner, and deter-

1. While we realize that it is appellant's burden on review to establish his entitlement to relief, we feel it necessary to pause nonetheless to address several glaring inadequacies in the Commonwealth's brief. Most distressing is the complete disregard of Pa.R.A.P. 2119(b), Citations of authorities, for in three of the five arguments presented by appellant, the Commonwealth's counter-argument proceeds blithely along unencumbered by citation to legal precedent. Certainly, it would behoove the Commonwealth to present a more cogent and complete argument in the interest of upholding appellant's convictions for the serious offenses of rape and aggravated indecent assault.

mine whether sufficient evidence was presented to prove each element of the crime beyond a reasonable doubt. *See, e.g., Commonwealth v. Berkowitz,* 537 Pa. 143, 147, 641 A.2d 1161, 1163 (1994); *Commonwealth v. Smolko,* 446 Pa.Super. 156, 162–64, 666 A.2d 672, 675 (1995).

Instantly, appellant was convicted under 18 Pa.C.S.A. § 3121(2), which provides:

### § 3121. Rape

A person commits a felony of the first degree when he or she engages in sexual intercourse with a complainant:

\* \* \*

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

While acknowledging JH's testimony that appellant put his hand around her mouth and throat area and threatened to kill her, it is appellant's position that the Commonwealth failed to prove that the "threat of force was enough to prevent resistance by a reasonable person." Appellant's brief at 8. This argument is purportedly supported by the fact that the victim voluntarily entered appellant's apartment on two occasions, did not attempt to flee the bedroom, took off her own shirt, and gave appellant her phone number.[2]

In interpreting § 3121(2), this Court has consistently held that threats of physical violence are sufficient to sustain a conviction; actual violence is not necessary. Moreover, a victim need not actively resist her assailant if such resistance is reasonably believed to be futile or dangerous. *See, e.g., Commonwealth v. Riley,* 434 Pa.Super. 414, 416–17, 643 A.2d 1090, 1091 (1994); *Commonwealth v. Lee,* 432 Pa.Super. 414,

---

2. Appellant's argument that insufficient evidence was introduced to prove rape by threat of forcible compulsion is interwoven with argument to the effect that the evidence was insufficient to support a conviction for rape by forcible compulsion. *See, e.g.,* appellant's brief at 8. While it is true that appellant was charged with both rape by forcible compulsion and rape by threat of forcible compulsion, he was only convicted of the later. It is therefore immaterial whether the same evidence would suffice to uphold a conviction for the former.

416–18, 638 A.2d 1006, 1008 (1994); *Commonwealth v. Gabrielson,* 370 Pa.Super. 271, 283–85, 536 A.2d 401, 407 (1988); *Commonwealth v. Rough,* 275 Pa.Super. 50, 55–57, 418 A.2d 605, 608 (1980).

Contrary to appellant's assertion, we believe that ample evidence was adduced at trial to find that appellant threatened the victim with force that would prevent a person of reasonable resolution from further resistance.

JH testified that she made attempts to free herself prior to appellant's threat to kill her, but that appellant's superior physical strength prevented her from doing so. Additionally, she testified that her compliance afterwards was the result of shock, fear, and the desire to keep appellant calm and believing that she would not report the rape. Furthermore, appellant's own oral and written admissions established that the victim said "no" several times and was restrained by appellant. This, in addition to the physical evidence of bruising and bleeding, is more than sufficient to sustain appellant's conviction.

■ To reach a contrary conclusion, this Court would be compelled to hold that a victim must resist to the death or be threatened with a weapon. To require a victim in a life-threatening situation to make such a Hobson's choice would be palpably illogical and ill-advised. We recognize that there are times when the path of least resistance offers the only viable option, and we re-affirm our earlier holdings to the effect that verbal threats will suffice for a conviction under 18 Pa.C.S.A. § 3121(2).

■ Appellant next claims that the trial court erred in denying the defense's *motion in limine* to exclude testimony concerning appellant's advances towards the victim's friend, LL, earlier on the evening in question. Specifically, appellant contends that the testimony detailed a prior bad act that was prejudicial and not within one of the recognized exceptions to the general rule that prior bad acts cannot be used to prove the criminal propensity or disposition of the accused.

Trial judges are afforded broad latitude and discretion in determining the admissibility of evidence. Their learned determinations will not be disturbed on review absent a finding of an abuse of discretion. *See, e.g., Commonwealth v. Wharton*, 530 Pa. 127, 144–46, 607 A.2d 710, 719 (1992); *Commonwealth v. Holloman*, 424 Pa.Super. 73, 78–80, 621 A.2d 1046, 1049 (1993).

In the instant matter, the victim's friend, LL, testified that appellant made overt sexual advances towards her several times on the evening in question. Further, she testified that appellant became frustrated at her refusals and told her that he was "going to go downstairs and see if he liked my friend." (TT 58.)

It was the prosecution's theory that appellant approached JH only after being repeatedly rebuked by LL, and that appellant was angry and frustrated at the time. This theory received support directly from appellant, who answered affirmatively when asked if his purpose in introducing himself to LL and JH was to "get laid from a 15 year old girl." (TT 176.)

This Court has long recognized an exception to the rule disallowing testimony of prior bad acts where the testimony is relevant to detail the overall sequence of events leading up to the crime and the evidence is not unduly prejudicial. *See, e.g., Wharton*, 530 Pa. at 146–48, 607 A.2d at 720; *Commonwealth v. Stiffler*, 441 Pa.Super. 377, 379–82, 657 A.2d 973, 975–76 (1995); *Holloman*, 424 Pa.Super. at 78–82, 621 A.2d at 1049–50. Additionally, relevant evidence that aids in determining the accused's intent has long been admissible regardless of the fact that it details a prior bad act, subject only to the limitation that it not be unduly prejudicial. *Id.*

Recognizing these exceptions, appellant nonetheless argues that they are not applicable to the facts of the instant case. Relying on the case of *Commonwealth v. Kramer*, 389 Pa.Super. 136, 566 A.2d 882 (1989), appellant contends that our Court has created a separate test for the admission of prior bad acts when the accused is charged with a sex crime.

Specifically, appellant argues that, for a prior bad act to be admissible in a sex crime case, the challenged act must have been close in time to the alleged crime and concern behavior with the victim, not with any third parties.

This is an outlandish argument that is not only belied by copious caselaw from our Court, but also from the *Kramer* case itself. The *Kramer* Court held that *one* exception to the general rule disallowing prior bad acts was evidence of prior sexual relations between the accused and the victim. At no time did the court intimate that prior relations between an accused and his victim was the *only* allowable exception in a sex crime case.

We believe that the course of conduct and intent exceptions are befitting in the instant matter, and therefore hold that the trial court did not abuse its discretion in allowing the testimony. Appellant's actions cannot be viewed and understood when considered in a vacuum. Rather, his mood, demeanor and intent in approaching the victim are all connected to his earlier behavior with LL.

█ Also, we find that the proffered testimony was not so unfairly prejudicial that its probative value was overshadowed. As our Supreme Court has recently stated, a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration." *Wharton*, 530 Pa. at 146–48, 607 A.2d at 720. *See also Commonwealth v. Dollman*, 518 Pa. 86, 89–94, 541 A.2d 319, 321–23 (1988); *Commonwealth v. Blount*, 387 Pa.Super. 603, 614–16, 564 A.2d 952, 958 (1989).

█ The next issue presented for our review is whether the trial court erred in instructing the jury that deadlock as to two of the counts charged could result in a re-trial, necessitating further delay, expense, and stress.[3] When reviewing the propriety of statements made by a trial court in its jury charge, this Court must consider "whether the court commit-

3. As an illustration of the anemic state of the Commonwealth's brief, we note that the counter-argument as to this issue consists of six single-spaced sentences which are completely unfettered by citation to legal authority. While brevity may be the soul of wit, the same does not hold true in legal argument.

ted a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Edmondson,* 447 Pa.Super. 596, 599–600, 670 A.2d 183, 185 (1996) (quoting *Commonwealth v. Cook,* 383 Pa.Super. 615, 620–21, 557 A.2d 421, 424 (1989)).

Appellant's argument on this matter is somewhat amorphous, but seems to claim that the jury was pressed into reaching a verdict due to judicial bullying. Were this accurate, appellant would be entitled to relief, for it is "well established that a verdict brought about by judicial coercion is a legal nullity." *Commonwealth v. Chester,* 526 Pa. 578, 603–06, 587 A.2d 1367, 1380 (1991); *see also Edmondson,* 447 Pa.Super. at 600, 670 A.2d at 185.

In order to assess the propriety of the trial judge's statements, this Court must review the instructions as a whole to determine if any improper judicial wrangling occurred. The record reveals that the jury began its deliberations at 6:30 p.m. on a Friday evening. At 8:10 p.m. on the same evening, the jury sent the judge a note which conveyed that they had reached a verdict as to six of the eight counts, but were "totally divided" as to the remaining two.[4]

Thereafter, the judge called the jurors back into the courtroom and made the following statement:

> Under the law, if the jurors are totally divided and hopelessly deadlocked on the two counts, you are permitted to return a verdict on the counts on which you can agree. In that event, if we accept it then in effect it will be a mistrial as far as the two counts are concerned. And if the Commonwealth chooses, there could be a future trial on those two charges. In that event, of course, there would be delay. There would be stress. There would be anxiety and there would be certain expenses.

**4.** Appellant was originally charged in an eight-count indictment with rape by forcible compulsion, rape by threat of forcible compulsion, attempted involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, simple assault (bodily injury caused), simple assault (physical menace) and corruption of minors.

The judge then asked the foreperson if there was a reasonable probability that further deliberations would be fruitful. In response, the foreperson stated: "We are closer to one now, but I think we will need time. We are closer with one of them now before we came down here, but we will need some time." The jury then resumed their deliberations and reached a verdict as to all counts at 9:30 p.m.

This Court has previously held that judicial instructions such as these are not tantamount to coercion necessitating a finding of reversible error. *See, e.g., Commonwealth v. Bazabe,* 404 Pa.Super. 408, 412–14, 590 A.2d 1298, 1301 (1991); *Chester,* 526 Pa. at 601–08, 587 A.2d at 1379–81.

At no time did the trial judge forbid the jury to return a hung verdict or instruct the jury to convict or acquit appellant. Rather, the instruction served merely to impress upon the jurors the magnitude of their undertaking. Jury service is a solemn undertaking, and every effort should be made to freely reach consensus. The instruction in the instant matter left the jurors free to return a hung verdict if they were truly divided, but only asked that the decision be the result of true and careful consideration. In our view, this type of instruction is especially appropriate in cases such as this when the jury had been deliberating for such a short period of time prior to informing the court that it was at an impasse.

 Appellant's fourth issue presents the question of whether the trial court erred in permitting a Commonwealth witness to consult personal notes during her testimony. In determining the admissibility of evidence, trial judges are afforded broad latitude and discretion. A reversal is only warranted upon a finding of an abuse of discretion. *See, e.g., Wharton,* 530 Pa. at 144–46, 607 A.2d at 719; *Holloman,* 424 Pa.Super. at 78–80, 621 A.2d at 1049.

This issue first arose at trial during a sidebar conference at which the assistant district attorney (A.D.A.) informed both the trial judge and defense counsel that the victim's friend, LL, had a three-page, handwritten account memorializing the evening in question. The A.D.A. then related that he was

going to call LL as a witness and that a copy of the statement would be furnished to defense counsel.

Appellant's counsel objected on the ground that he had not yet seen the writing; however, the trial judge allowed LL to testify on the condition that defense counsel would be permitted to review the document prior to cross-examination. Additionally, the judge ruled that the document would have to be properly authenticated and could only be used to refresh the witness's memory, not as substantive evidence.

Thereafter, the A.D.A. proceeded to question LL about the events surrounding the evening in question. Specifically, her testimony established that she and the victim were visiting friends at Milton Village on the afternoon that they were introduced to appellant, and that appellant made unwanted, and unsuccessful, sexual advances towards LL prior to turning his attention towards JH.

At the conclusion of her direct examination, the following exchange took place:

A.D.A.: Now, this morning you provided a statement to the police officer in this case; is that correct?

LL: Yes.

A.D.A.: And you provided it to him on this yellow paper?

LL: Yes.

A.D.A.: You handwrote this?

LL: Yes, I did.

A.D.A.: When did you write it?

LL: I wrote it about a month—not a month, it was—I went to counseling and me and my counselor wrote it after everything that happened.

A.D.A.: Okay. And this is your recollection of what had occurred on that day?

LL: Yes.

This purported authentication is troublesome for several reasons. The present memory refreshed doctrine allows a witness whose present memory while testifying is inadequate to use an aid to jog their memory as to the past events at

issue. Although our courts have been quite liberal in allowing virtually any aid, written, oral or visual, to revive a witness's memory, we have been vigilant in our insistence that the proper procedures be followed prior to utilization of the doctrine.

 Indeed, even a cursory review of the plethora of caselaw on this issue establishes that three conditions precedent must be established before a witness may refresh his or her memory while testifying. The proponent must establish that: 1) the witness's present memory is inadequate; 2) the writing or other aid could refresh the witness's memory and 3) the writing or other aid actually refreshes the witness's memory. *See, e.g., Commonwealth v. Sal–Mar Amusements, Inc.,* 428 Pa.Super. 321, 329–31, 630 A.2d 1269, 1274 (1993); *Commonwealth v. Carr,* 370 Pa.Super. 1, 16, 535 A.2d 1120, 1128 (1987); *Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa.Super. 336, 344–45, 499 A.2d 637, 641 (1985); *Commonwealth v. Lamb,* 309 Pa.Super. 415, 427–29, 455 A.2d 678, 685 (1983); *Commonwealth v. Wilson,* 296 Pa.Super. 264, 270–71, 442 A.2d 760, 764 witness; it is not proper for the witness to take the stand to testify initially while holding the writing.

It follows, then, that the Commonwealth's argument on this matter, consisting of just three sentences, is not only woefully inadequate, but also thoroughly incorrect.[5] Absent the establishment of a proper foundation, we must agree with appellant that the court abused its discretion in allowing the witness to utilize her notes while testifying.

 Having held that the court erred in admitting LL's testimony, our inquiry must now turn to whether the error was of such magnitude as to require a reversal of appellant's conviction; for it is a truism of our law that not every legal

5. In its entirety, the Commonwealth's argument reads: "The notes were never admitted into evidence nor is there any indication in the record that the witness testified from her notes. At best, the notes were utilized to refresh the witness' recollection of events. Clearly, a witness whose memory is exhausted may use a document to refresh her recollection and thus the Court did not err. *Commonwealth v. Payne,* 455 Pa. 503, 317 A.2d 208 (1974)." [sic]

mishap prejudices a defendant to the extent that a reversal is warranted. *See, e.g., Commonwealth v. Rodriguez,* 533 Pa. 555, 559–63, 626 A.2d 141, 144–45 (1993); *Commonwealth v. Iannelli,* 430 Pa.Super. 402, 426–28, 634 A.2d 1120, 1132 (1993).

In *Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992), our Supreme Court outlined the requirements that must be met prior to finding that a trial error was harmless beyond a reasonable doubt, thus allowing a conviction to stand. Evidence improperly admitted may be treated as harmless if any one of the following three grounds is met:

> (1) the error did not prejudice the defendant or the prejudice was de minimus; or (2) the erroneously admitted evidence was cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Foy,* 531 Pa. at 327, 612 A.2d at 1352. *See also Rodriguez,* 533 Pa. at 559–61, 626 A.2d at 144; *Iannelli,* 430 Pa.Super. at 426–28, 634 A.2d at 1132.

With this in mind, we are confident that the admission of the tainted testimony was harmless error. LL's testimony essentially established the manner in which she, the victim, and appellant met on the night in question. At trial, both the victim and appellant relayed similar accounts of their initial meeting. This portion of LL's testimony was, therefore, cumulative of other, properly admitted evidence.

LL also testified as to the sexual advances made by appellant towards her. We find not only that this testimony was cumulative of appellant's admissions at trial, but also that any possible resulting prejudice was *de minimus* in nature. The facts relayed by LL did nothing to establish any part of a *prima facie* case for any of the offenses with which appellant was charged. The prosecution sought to use LL's testimony to establish intent; and while evidence of intent is always

relevant and admissible, it is not an element of any of the criminal offenses charged.

In sum, we hold that while appellant correctly asserts that the trial court erred in allowing LL to testify aided by her personal notes, the resultant harm was non-prejudicial. Therefore, a reversal of appellant's conviction is not warranted.

■■■ Appellant's final argument is that the trial court erred by imposing an illegal sentence.[6] Specifically, appellant avers that the aggravated indecent assault and rape convictions should merge for sentencing purposes and that it was therefore in error for the court to impose consecutive sentences.[7]

For this proposition, appellant cites *Commonwealth v. Smith*, 313 Pa.Super. 138, 459 A.2d 777 (1983), in which this Court held that the crimes of indecent assault and rape merge for sentencing purposes. While this is a true statement of the law, appellant's syllogism then breaks down. Appellant contends that because indecent assault and rape convictions merge, when based upon the same underlying predicate, aggravated indecent assault and rape convictions should also merge. "Accordingly, the statutory elements of Aggravated Indecent Assault are very similar to the charge of Indecent Assault which clearly merge under the law. Accordingly, the Trial Court erred." Appellant's brief at 14.

We fail to find the logic, let alone the precedential authority, for this proposition. Rather, the law of merger is well settled

**6.** At the risk of belaboring a point, we feel it appropriate to comment one final time on the paucity of precedential authority in the Commonwealth's brief. In addressing this important issue, the Commonwealth apparently was guided by the belief that this Court needs no assistance from the parties and can adequately address the issues on its own. It is a fortuitous happenstance for the Commonwealth that this is true, for otherwise we would be left to drown in a legal lurch.

**7.** We observe that while the substance of appellant's argument on this issue alleges that the trial court imposed an illegal sentence, appellant has included in his brief a statement pursuant to Pa.R.A.P. 2119(f), relating to challenges to the discretionary aspects of sentence. As a clarification to the parties, we note that a court has no discretion to impose an illegal sentence, and thus a 2119(f) statement need not be included when making such a challenge.

that if an actor commits multiple criminal acts, even as a part of a single criminal episode, the actor will be guilty of multiple crimes which do not merge for sentencing purposes. *See, e.g., Commonwealth v. Ashe,* 343 Pa. 102, 102–06, 21 A.2d 920, 921 (1941); *Commonwealth v. Richter,* 450 Pa.Super. 383, 390–92, 676 A.2d 1232, 1236 (1996).

Applying this guideline to the record in the instant matter, we have no trouble concluding that the convictions for rape and aggravated indecent assault were based upon separate and distinct factual predicates, thus negating appellant's contention. The rape charge against appellant was based upon the allegation that appellant forcibly engaged in vaginal intercourse with JH. The aggravated indecent assault charge, however, was based upon the allegation that appellant sought to forcibly engage in anal intercourse with the victim. Each of these charges was supported by sufficient and competent evidence. Therefore, we find that appellant committed two distinct crimes against the victim and could rightfully be sentenced separately for each violation.

Judgment of sentence affirmed.

FORD ELLIOTT and SAYLOR, JJ., concur in the result.