J-A04007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MCDOWELL | : | |
| | : | |
| Appellant | : | No. 2621 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 31, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004138-2016

BEFORE:   PANELLA, P.J., STRASSBURGER, J.[*], and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: Filed: July 2, 2020

Michael McDowell appeals from the judgment of sentence, of 8 to 16 years' imprisonment, after a jury convicted him of one count each of aggravated assault,[1] accidents involving personal injury,[2] accident involving damage attended vehicle or property,[3] and aggravated assault by vehicle.[4] On appeal, Appellant raises five issues, claiming the trial court erred in:  (1) instructing the jury there was no evidence admitted at trial regarding

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] 75 Pa.C.S.A. § 3742(a).

[3] 75 Pa.C.S.A. § 3743(a).

[4] 75 Pa.C.S.A. § 3732.1(a).

Appellant's shirt sleeve length; (2) finding the evidence sufficient to sustain his conviction because the Commonwealth failed to prove "serious bodily injury"; (3) interrogating defense witness Shawn Rooney during a Fifth Amendment colloquy about the content and reliability of his proposed alibi testimony; (4) denying Appellant's request to play the entire content of a prison telephone call rather than just the portion offered by the Commonwealth; and (5) allowing the Commonwealth to allude to the fact Appellant had been previously incarcerated. *See* Appellant's Brief, at 10-11. After review, we affirm.

On January 19, 2016, in the mid-afternoon, a truck owned by Appellant's friend, Sean Fishgold, rear-ended a vehicle driven by Augustine Swaray, on the 7300 block of Torresdale Avenue in the City and County of Philadelphia. The truck hit Swaray's car with such force it struck a tree and another parked vehicle.

Swaray was unable to identify the truck's driver either before or during trial, although he did narrow down a double blind photo array to two photographs, one of which was Appellant's. Approximately one week after the accident, Swaray gave a description of the driver to the police.

At trial, Swaray was unable to recall the description. N.T. Trial, 6/12/18, at 64. During cross-examination, defense counsel read this description to Swaray which included the information Appellant was wearing, a "short-sleeved shirt" which was "white." *Id.* at 66. Mr. Swaray affirmed the shirt

- 2 -

color and the shirt was a t-shirt but never confirmed the sleeve-length. Defense counsel did not question Swaray as to whether the driver had any tattoos on his arms. *Id.* at 62-69. Swaray was not injured as a result of the accident, although his car suffered $800.00 worth of damage.

After hitting Swaray's car, the truck attempted to leave the scene, drove directly into the opposing lane of traffic and struck a vehicle driven and owned by Michelle Hunter head-on, totaling it. The driver attempted to extricate his vehicle from hers but was unsuccessful, and he fled the scene on foot.

Michelle Hunter was the only witness to identify Appellant. She gave a description of Appellant to the police, selected his photo from a double blind array, and identified him both at the preliminary hearing and at trial. Hunter described Appellant as wearing a white t-shirt but never mentioned and was never questioned about the length of the sleeves.[5] *Id.* at 88, 92. Defense counsel did not question her about any tattoos she might have observed on Appellant's arms. *See id.* at 81-92.

While searching the vehicle, the police found the operating keys on a ring with multiple gym passes; all of the passes belonged to Appellant. *See*

_____

[5] The only other reference to what Appellant was wearing on the day of the accident came during the cross-examination of Philadelphia Police Officer James Tonkinson, who executed the search warrant on Appellant's residence. One of the items mentioned on a search warrant was a white t-shirt, again there was no testimony or reference on the warrant as to whether it was a long-sleeved or shirt-sleeved t-shirt. *Id.* at 181.

*id.* at 44-45. The police were able to determine Fishgold was at the gym at the time of the accident. ***See id.*** at 40. He admitted to the police Appellant was a friend and fellow roofer who had borrowed the truck on at least one previous occasion. ***See id.*** at 48, 225.

As a result of the car accident, Hunter suffered from "traumatic brain injury. . . . bruised ribs, bruised [ ] collarbone. . . concussion." ***Id.*** at 76. She said she had to attend cognitive brain therapy, was unable to walk or "function correctly" for two weeks, was unable to work for four to five months, could not care for her children for three weeks, and was unable to drive a car for six months. ***Id.*** at 77-79. Further, defense counsel stipulated to the admission of Hunter's medical records and that

> . . . the medical records indicate that Michelle Hunter was admitted to Aria Torresdale Hospital 3:11 p.m. on January [19], 2016. She received among other things a CT scan of her head where the doctors found trauma, soft tissue damage and swelling in her frontal brain area.
>
> Miss Hunter was diagnosed with a closed head wound, a contusion to her forehead and trauma to her brain. She was discharged from the hospital later that night.

***Id.*** at 191-92.

At trial, Appellant did not present any evidence regarding either the length of his shirt sleeves or whether he had tattoos on his arms at the time of the accident, two years earlier. Immediately prior to closing, Appellant *sua sponte* began to disrobe because he wanted the jury to see his tattooed arms. N.T. Trial, 6/13/18, at 26. However, when the trial court asked defense

counsel if he wanted to put on rebuttal evidence regarding the tattoos, counsel declined. *Id.* at 27-28. The trial court did permit the jury to view Appellant in short sleeves with no testimony. *Id.* at 29-30.

Appellant called two witnesses on his behalf, a co-worker, Shawn Rooney, who testified he believed Appellant was at work with him at the time of the accident. Appellant also called Fishgold, who testified Appellant had not borrowed the truck from him that day and thought Appellant had left his gym passes in the truck earlier.

On June 13, 2018, the jury convicted Appellant of aggravated assault, aggravated assault by vehicle, and one count each of leaving the scene of accident involving damage to property and personal injury. On August 13, 2018, the trial court sentenced Appellant. Appellant did not file any post-sentence motions. The instant, timely appeal followed.[6]

In his first claim, Appellant contends the trial court abused its discretion by instructing the jury there had been no clarifying evidence admitted at trial regarding Appellant's sleeve length. Appellant's Brief, at 17-37. We disagree.

The standard governing our review of a challenge to jury instructions is as follows:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and

---

[6] In response to the trial court's January 29, 2019 order, Appellant filed a concise statement of errors complained of on appeal on February 19, 2019. On May 30, 2019, the trial court issued an opinion.

complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008) (citation omitted).

Appellant does not take issue with the trial court's initial jury charge and does not point to any inaccurate statement of the law. However, during deliberation, the jury returned with questions. The first was when Appellant got his tattoos. *See* N.T. Trial, 6/13/18 at 99. The second was, "the shirt the defendant was alleged to be wearing at the time of the accident, the white T-shirt does the testimony clarify if it was long or short sleeved?" *Id.*

The parties agreed there was no evidence entered about when Appellant got the tattoos. *See id.* at 100. With respect to the sleeve issue, the Commonwealth argued there was no testimony clarifying the sleeve length. *See id.* Defense counsel noted Swaray's statement to the police mentioned sleeve length but the trial court stated the jury's question was about testimony, not the police statement and believed there was no testimony regarding sleeve length. *See id.*

Defense counsel then admitted he could not recall any testimony regarding the sleeve length. *See id.* Accordingly, the trial court charged the jury that the answer to their second question was "no." *Id.* at 104. Appellant did not object to the answer and did not take an exception. *See id.*

Because Appellant did not object, take an exception, or file a post-sentence motion regarding this claim, raising it for the first time in his Rule 1925(b) statement, we find this issue is not properly before us. While Appellant noted an initial concern about the proposed answer, he then acknowledged he could not recall any testimony about sleeve length. Appellant did not object to the charge as given or take an exception. As a result, the claim is waived. **See** Pa.R.Crim.P. 647(B); **Commonwealth v. Laird**, 988 A.2d 618, 646 (Pa. 2008); **Commonwealth v. Parker**, 104 A.3d 17, 29-30 (Pa. Super. 2014); **see also Commonwealth v. Coleman**, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived).

In any event, the claim lacks merit. Appellant contends this case is controlled by the Pennsylvania Supreme Court's decision in **Commonwealth v. Wilmer**, 254 A.2d 24, 26-27 (Pa. 1969). **See** Appellant's Brief, at 28-31. We disagree.

In **Wilmer**, a rape case in which the defendant was caught while having sex with the victim, the jury came back several times with questions regarding the pants the defendant wore at the time of the incident and whether they had fluid stains on them. **See Wilmer**, 254 A.2d at 26. Each time the trial court charged the jury that the pants had not been put into evidence and the evidence was legally sufficient to convict the defendant even without the pants. Our Supreme Court held this was proper. **See id.**

However, the trial court also charged the jury the pants were of no evidentiary value and would be of no use in determining guilt or innocence. *See id.* The Supreme Court found this was improper. *See id.* While a trial court is permitted to comment on the evidence, it cannot instruct the jury about the value or lack of value of a particular piece of evidence or its absence. *See id.* at 26-27.

Here, the trial court never commented on the value of any particular piece of evidence or told the jury to disregard the issue of sleeve length or Appellant's tattoos. Moreover, the court instructed the jury throughout trial and in its final charge, that the jury was the finder-of-fact and was responsible for reconciling any conflicts in the testimony. *See e.g.* N.T. Trial 6/12/18, at 11 and 16; 6/13/18, at 67-70. *Wilmer* is simply inapposite. Appellant's first claim is both waived and would not merit relief.

In his second claim, Appellant contends the evidence was insufficient to sustain his convictions for aggravated assault and aggravated assault by vehicle because the Commonwealth failed to prove serious bodily injury. We disagree.

Our standard of review for a challenge to the sufficiency of the evidence is as follows:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the

factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Edwards***, 177 A.3d 963, 969-970 (Pa. Super. 2018) (quotation marks and citations omitted, brackets in original).

The crime of aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). The crime of aggravated assault by vehicle occurs when a person "recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic[.]" 75 Pa.C.S.A. § 3721.1(a). Of primary importance to Appellant's arguments, the Crimes Code defines "[s]erious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Initially, we note Appellant's sufficiency claim is less a claim the Commonwealth did not make out the elements of the offense than a claim the jury should have not have credited Ms. Hunter's testimony about the extent of her injuries and that defense counsel erred in entering into the above-

quoted stipulation because the medical records did not support it. However, an argument the finder of fact should not have credited a witness's testimony goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (finding claim jury should not have believed victim's version of events goes to weight, not sufficiency of evidence). Moreover, a claim counsel was ineffective for entering into a stipulation is not cognizable on direct appeal, absent circumstances not applicable here. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) ("claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.").

Regardless, the injuries delineated above are sufficient to show serious bodily injury. *See Commonwealth v. Rife*, 312 A.2d 406, 409 (Pa. 1973) (holding evidence of skull fracture and concussion sufficient to show serious bodily injury); *see also Commonwealth v. Cassidy*, 668 A.2d 1143, 1146 (Pa. Super. 1995) (holding evidence victim had cast put on wrist, wore back brace, and had difficulty moving for two months sufficient to show serious bodily injury). Appellant's second claim does not merit relief.

In his third claim, Appellant alleges the trial court erred when it allowed the Commonwealth to play portions of a prison telephone call between Appellant and a third party, rather than playing the entire telephone call in

violation of Pennsylvania Rule of Evidence 106. However, Appellant waived this claim.

Here, it is not apparent Appellant preserved this issue. Our review of the record demonstrates it was Appellant, not defense counsel, who wanted the whole telephone call played. *See* N.T. Trial, 6/13/18, at 4-8. Moreover, the record reflects, after the trial court declined to play the entire telephone call, defense counsel and the Commonwealth worked out an agreement as to what portions of the telephone call they would play for the jury. *See id.* at 15. Defense counsel actually stated in reference to the agreement, "I think we're great." *Id.*

Pennsylvania law does not allow hybrid representation either at trial or on the appellate level. *See Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013). Moreover, the United States Supreme Court has held there are numerous choices relating to the conduct of trial, and, with respect to choices by counsel regarding the admission of evidence, the defendant is bound. *See United States v. Gonzalez*, 553 U.S. 242, 248-49 (2008). Therefore, at least for purposes of direct appeal, Appellant cannot avoid waiver by claiming he personally wished to have the entire telephone call played and disagreed with counsel's decision to enter into an agreement with the Commonwealth.

However, even if we were to find Appellant preserved the claim at trial, we would still find waiver. There is no transcript of the call contained in the record and neither party quotes from either the stipulated portions of it or the

full call in their brief. While a CD-R is included in the certified record, it is not playable. It is impossible for this Court to address the merits of Appellant's claim and make a proper determination, without hearing the telephone call to determine whether the trial court abused its discretion in denying his request. It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." *Commonwealth v. Petroll*, 696 A.2d 817, 836 (Pa. Super. 1997) (citation omitted). As a result, Appellant waived his third claim for this reason as well.

In his fourth claim, Appellant maintains the trial court violated his due process rights by engaging in a lengthy colloquy with his purported alibi witness, Shawn Rooney, in violation of the United States Supreme Court's *per curiam* decision in *Webb v. Texas*, 409 U.S. 95 (1972). *See* Appellant's Brief, at 47-52. We disagree.

At the time of trial, Appellant's alibi witness was in custody. *See* N.T. Trial, 6/12/18, at 155. His attorney was unavailable that day and the trial court, without initial objection and outside the presence of the jury, questioned Rooney to ensure there were no Fifth Amendment issues. *See id.* at 155-59. Rooney indicated, despite defense counsel's representation to the contrary, he had not discussed his proposed testimony with his attorney. *See*

*id.* at 159-60. Without prompting, Rooney then began to discuss the substance of his testimony, admitting he did not remember the date he was supposed to be giving an alibi for and ultimately, after a few questions by the trial court, giving an alibi for the wrong year. *See id.* at 160-61.

After both the trial court and defense counsel expressed their confusion, the trial court continued to question Rooney, over defense counsel's objection, about the substance of his testimony. It expressed its concern, based upon the statements made by Rooney, that Rooney had been coached into giving a false alibi.

Further, Rooney admitted his written alibi statement had not been written by him but by other individuals with personal and pecuniary interests in the outcome of the case. *See id.* at 162-74. While the trial court's questioning of Rooney was extensive, at no point did it threaten him and Rooney later testified on behalf of Appellant. *See id.* at 202-22.

Appellant claims this questioning ran afoul of the Supreme Court's ruling in *Webb*, violating his right to due process. However, his reliance on *Webb* is misplaced. In *Webb*, the trial judge singled out the only defense witness and proceeded to threaten to personally bring perjury charges against him and discussed the possible penalties for perjury. *See Webb*, 409 U.S. at 96-98. As a result of these remarks the witness refused to testify. *See id.* The Supreme Court concluded the selection of this particular witness, the excessively strong admonition, and the unwarranted assumption the witness

- 13 -

intended to lie, violated defendant's right to due process as it "effectively drove the witness off the stand." ***Id.*** at 98.

Here, unlike in ***Webb***, while the trial court may have questioned Rooney extensively, it neither threatened nor admonished him. Further, Rooney was not the only defense witness. Lastly, again unlike in ***Webb***, Rooney testified on Appellant's behalf. Under these circumstances, the trial court did not violate Appellant's due process rights. ***See id.*** at 97-98. Appellant's fourth claim does not merit relief.

In his fifth and final claim, Appellant argues the prosecutor committed misconduct when he alluded to Appellant's prior incarceration during cross-examination of defense witness Sean Fishgold. ***See*** Appellant's Brief, at 52-53. However, Appellant waived this claim.

This Court has stated, "[i]n order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial." ***Commonwealth v. Sasse***, 921 A.2d 1229, 1238 (Pa. Super. 2007) (citation omitted).

During cross-examination of Fishgold, the following exchange occurred:

[The Commonwealth]: Mr. Fishgold, how are you doing, sir?

[Mr. Fishgold]: Good.

[The Commonwealth]: Let's see. Just first of all, fair to say you're pretty good friends with [Appellant] right?

[Mr. Fishgold]: Correct.

[The Commonwealth]: During the brief time when he was incarcerated, you looked after his kids.

[Mr. Fishgold]: Uh-hun.

[The Commonwealth]: Is that right? Is that a yes?

[Mr. Fishgold]: Yes.

[The Commonwealth]: Cool. And pretty close with his family?

[Mr. Fishgold]: Yes.

[The Commonwealth]: Do you know Mr. Rooney as well?

[Mr. Fishgold]: Yes.

N.T. Trial, 6/12/18, at 232-33.

Therefore, the record reflects Appellant did not object to the question. Appellant does not point to any location in the record where he moved for a mistrial, or sought other relief, and our review of the record likewise did not identify any such action. *See* Pa.R.A.P. 2119(e); *see also* Appellant's Brief, at 52-53. Because Appellant did not preserve this issue in the trial court, he has waived it for purposes of appeal. *See Manley*, 985 A.2d at 267 n.8; *Sasse*, 921 A.2d at 1238.

Moreover, the claim is without merit. The following standards govern our review of the denial of a motion for mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed

- 15 -

to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

**Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa. Super. 2016) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." **Commonwealth v. Smith**, 131 A.3d 467, 475 (Pa. 2015) (citation omitted). "The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." **Commonwealth v. Parker**, 957 A.2d 311, 319 (Pa. Super. 2008) (citation omitted).

In this case, the Commonwealth made a fleeting reference to Appellant's incarceration and then moved to a series of questions about Fishgold's relationship with other individuals in Appellant's circle of friends. The Commonwealth never mentioned Appellant's incarceration again. We are hard pressed to understand how this fleeting reference could have deprived Appellant of a fair trial. In any event, the jury was ultimately going to learn of Appellant's incarceration because of the playing of the prison call. **See** N.T.

- 16 -

Trial, 6/13/18, at 19. Therefore, even if Appellant had preserved the claim, we would conclude Appellant was not entitled to a mistrial on this basis.

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge Colins notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/20